## Stock, et al. v. Virginia-Kentucky Oil Company, et al.

(Decided February 13, 1923.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Leases and Contracts.—An oil lease for a term of five years, which provided that "the party of the second part agrees to begin a well on said premises within one year from date hereof, or pay at the rate of one dollar per acre per year, payable semi-annually in advance, for each additional year the payment is delayed until a well is commenced . . . and it is agreed that the completion of said well shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term of the lease," does not become void as to the lessee on his failure to pay rentals, after a well has been completed to the depth of the oil bearing formation even though it be dry.

2. Mines and Minerals—Lease—Parties.—The parties to an oil and gas lease have the power, and it is not against public policy to enter into an agreement whereby the completion of a well on the premises shall be a liquidation of all future rentals during the remainder of the term.

COLEMAN TAYLOR and J. VERSER CONNER for appellants.

GAINES & GARDINER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Appellants, J. E. Stock and Lee Champion, are the holders by assignment of an oil and gas lease on the lands of Bond and Dalton, situated in Allen county, Kentucky,

which said lease was executed May 30, 1917, and duly recorded in the proper office. By its provisions the lease was to continue for five years and so long thereafter as oil and gas were produced from the premises in paying quantities. The appellant, Virginia-Kentucky Oil Company, is a holder by assignment of a junior oil and gas lease upon the same property, executed by Bond and Dalton, and under said junior lease is in the possession of the premises drilling and operating for oil and gas. Said junior or top lease was executed by Bond and Dalton long after the original lease under which appellants claim was recorded in the office of the clerk of the Allen county court, and appellee company not only had presumptive notice, according to the averments of the petition, of the said senior lease but had actual notice of the said lease at the time it took the assignment of the said junior lease.

This action was commenced by appellants, Stock and Champion, in the Allen circuit court to have the junior lease cancelled and declared a nullity, and to have their title quieted to the original lease.

It is the contention of appellee company that the original lease expired and became null and void by its terms before the execution of the junior lease, and further that the said original lease lapsed and became void because of the failure of appellants and their predecessors in title to pay the rentals due under said lease, as the same became due in accordance with the terms of the contract. The original lease contains the following provision:

"It is agreed that this lease shall remain in force for the term of five years from this date, and as long thereafter as oil and gas, or either of them, is produced therefrom by the parties of the second part, his successors and assigns. . . . The party of the second part agrees to begin a well on said premises within one year from date hereof, or pay at the rate of one dollar per acre per year, payable semi-annually in advance for each additional year such beginning is delayed until a well is commenced. The above rental shall be paid to the parties of the first part in person or by check, . . . and it is agreed that the completion of said well shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term of the lease. . . . It is agreed that unless said well is completed or the rental paid as hereinbefore stipulated this lease

shall be and become null and void and of no further force and effect.''

Within a year from the date of the lease, May 30, 1917, the appellants drilled or caused to be drilled a well on the leased premises to a depth at which the drill penetrated the oil bearing formation from which oil is generally found in that oil district and actually obtained a small showing of oil, but the well was not a producer of enough oil to make it profitable to operate it, and it was not operated. Around this property were a number of oil producing wells either at the time of the drilling of said well on the lease or later at the time this litigation was in progress. The value of the lease is averred to be $40,000.00.

Reading all of the provisions of the lease together it is apparent that it was the intention of the parties to the said original lease to require the lessee to sink a well upon the premises within one year, or thereafter pay a rental of one dollar per acre per year, payable semi-annually in advance, until a well was completed or the five-year period expired. The well having been drilled within the said time and in conformity to the said lease the question now is, whether such a well—a dry hole—operates as a full liquidation of all rentals under the provisions of the lease as set out in one of its clauses reading: ''It is agreed that the completion of said well (meaning the first well) shall be and operate as a full liquidation of all rentals under these provisions during the remainder of the term of the lease.'' We held in the case of Keyes v. Williams, 190 Ky. 596, that the drilling of a hole in the proper manner to the depth of the sand or formation of the district from which oil and gas are usually produced, is a compliance with the provisions of a lease which requires the completion of a well on the premises within a given time to prevent a forfeiture. We also held in the case of Suggs v. Williams, 191 Ky. 188, that a lease which provides for the completion of a well within a stipulated time on pain of forfeiture is satisfied by the drilling of a well into the oil bearing sands, yet as the lessor is entitled either to the royalties from a producing well, or to rentals in lieu thereof, the drilling of a dry hole will not be regarded as a completed well so as to relieve the lessee of liability to pay rentals. The foregoing cases are distinguishable from the one under consideration. Neither of the said lease contracts had in it a provision that the com-

pletion of a well should operate as a full liquidation of all rentals during the remainder of the term of the lease. So the question is: May the original parties to an oil and gas lease stipulate that the completion of a well on the premises within one year from the making of the lease operates as a full liquidation of all rentals elsewhere provided in the contract to be paid until a well is completed on the premises and be bound thereby? If the cost of drilling a well to conform to the contract was but nominal, we would readily answer in the negative, but in as much as the expense of drilling a well in that oil field, as in others, amounts to many hundred dollars, a sufficiently valuable consideration, we see no reason why the parties might not stipulate that the drilling of such a hole should operate as a liquidation of all rentals for the balance of the term and the parties be bound thereby. There is nothing in such an arrangement contrary to public policy. On the contrary it helps to induce the lessee to drill a well to avoid further rentals.

As the completed well on the premises in question operated as a complete liquidation of the rentals the lease did not lapse for failure of the lessee to pay to the lessor semi-annually one dollar per acre for the continuance of the lease. In fact, the lessor was not entitled to receive the rentals which he now complains were not paid upon the precise day on which they would have been due had no well been completed on the premises. Had no well been completed on the premises within the time specified the failure to pay the rentals under the provisions of this lease contract would have voided it.

The appellants, plaintiffs below, set forth in their petition and its several amendments filed thereto, all said facts, including the fact that the said oil and gas lease was executed by Bond and Dalton to the predecessors of appellant, and by the said lessees duly assigned and transferred to appellants, and that appellants in pursuance to and under said lease entered upon the premises and drilled to completion an oil well which penetrated the oil bearing formation in that district without discovering sufficient oil to justify the operation of said well; that the appellants did not intend to and did not in fact abandon or surrender the said lease but continued to hold and claim the same under the terms of the said contract, and that the said lease was properly of record in the office of the clerk of the Allen circuit court; that said

lessors Bond and Dalton executed to the predecessors of the Virginia-Kentucky Oil Company a junior or top lease upon the same land which the said company took with full knowledge of the existence of the original lease under which appellants claim, and appellee company is now holding and claiming said property under the said junior lease. A copy of the lease contract was attached to and made a part of the petition. Its terms were set out and relied upon in the petition as amended. Upon general demurrer the averments of the petition were admitted as true. The facts admitted manifest a right in appellants, then plaintiffs, to the relief prayed, and the trial court erred in sustaining the demurrer to the petition.

For the reasons indicated the judgment is reversed for proceedings consistent with this opinion.

Judgment reversed.