## Unity Oil Company, et al. v. Hill, et al.

(Decided October 19, 1923.)

### Appeal from Allen Circuit Court.

Mines and Minerals—Well Drilled into Oil-Bearing Sands Held a "Completed Well."—The drilling of a well into the oil-bearing sands will be regarded as a completed well, for the purpose of

avoiding cancellation of a lease, relieving lessee of liability to pay rent, though the well was not "shot," because there was no pipe line established near the well, and shooting could not be reasonably expected to make it a producing well.

GEORGE DURELLE and M. H. THATCHER for appellants.

JOHN B. RODES and PORTER SIMMS for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

On December 15, 1917, George C. Hill and his wife executed to Paul Wright an oil and gas lease on a tract of land in Allen county. The Unity Oil Company is the remote vendee of the lessee, and in April, 1920, the lessors filed a suit against the oil company in the Allen circuit court for a cancellation of the lease and to quiet their title to the leased property, alleging that the lease was unilateral and did not constitute an enforceable contract, and that the oil company had violated the covenants of the lease in that it had failed and refused to drill and complete a well on the premises within six months from the date of the lease, and had further failed and refused to pay in advance the rental that it had agreed to pay upon the expiration of a period of six months from the date of the lease. The latter averments were put in issue, proof was taken, and on the submission of the case to the chancellor below the lease was cancelled. The oil company has appealed from that judgment.

The question of the unilaterality of the contract is not argued on this appeal and, indeed, cannot be sustained under any view of the law. It is contended, however, that the terms of the lease were violated by the oil company, and that its cancellation was justified on that ground. The lease provides that the party of the second part shall drill and complete a well "on said premises within six months from the date hereof, or pay annually in advance at the rate of $1.50 an acre per year for each additional year such completion is delayed from the time above mentioned for the drilling and completing of such well, until a well is completed. The above rental shall be paid to the party of the first part in person or by check to his order, deposited in the postoffice by registered letter to his address at Claypool, Kentucky, and it is further agreed by parties of the first part that the completion of a well on and in the leased territory shall be and operate

as a full liquidation of all rental under this provision during the remainder of the term of this lease." Another provision is: "It is agreed that unless said well is completed or the rental paid as hereinbefore stipulated, this lease shall be and become null and void and of no further effect at the option of the lessor."

Appellant drilled a well to the oil-bearing sands within six months from the date of the lease or within the extension of that period allowed by appellees. The well was cased but showed what the witnesses called a "rainbow of oil." It was not shot and was not a producing well, that is, one from which oil in profitable quantities could be taken. Appellee contends that it was not a completed well within the terms of the contract, since it was not shot. It is not shown that the evidence of oil was such as to indicate to a reasonably prudent man that the shooting of the well would result in the production of oil. Appellant says that, even if it had been such a well as a reasonably prudent man could expect a production upon shooting it, there was not a pipe line close enough to justify shooting at that time; and further, that it expected to shoot the well later with the hope of a small production but it was not thought wise to do so until there was a pipe line established sufficiently near the well to afford facilities for transporting and marketing any oil that might be found. In view of the evidence as to the prospects of oil, we do not think that appellant was required to shoot the well or that the shooting of it could reasonably be expected to make it a producing well.

The question as to what is a completed well, in the sense that it will operate to prevent a forfeiture against the lessee, has been determined by this court in several cases, notably: Kies, et al. v. Williams, et al., 190 Ky. 596, and Sugg, et al. v. Williams, et al., 191 Ky. 188. It was held in the latter case, and that rule has been followed by subsequent decisions of the court, that the drilling of a well into the oil-bearing sands, though it be a dry well, will be regarded as a completed well for the purpose of avoiding forfeiture, but will not be regarded as a completed well so as to relieve the lessee of the liability thereafter to pay rent. In that case, however, the contract provided that if the lessee did not complete a well on the premises within one year he should thereafter pay a yearly rental of $1.00 an acre, payable quarterly in advance. What we decided was that the drilling of a dry well within the stipulated time operated to defeat the for-

feiture clause, but, as the lessor was entitled to royalties or rents, the drilling of such a well did not relieve the lessee of the liability thereafter to pay rent.

In Bradshaw, et al. v. Hurt, 198 Ky., page 38, there was a provision in the contract that the completion of a well should operate "as a full liquidation under this provision during the remainder of the term of this lease," and it was held under that provision that the drilling of the dry well into the sands in which oil and gas were usually found not only operated to defeat the forfeiture clause, but was a full discharge of any rental which otherwise would have accrued during the remainder of the term of the lease. In discussing the subject the court said: "No one, we think, would insist that a landowner might not for a sufficient valuable consideration agree to lease his land for oil and gas to another for a term of ten years without requiring development and the further payment of rentals. If he can do this, as it must be admitted he can, then he may agree with his lessee. that if the latter will drill a well on his premises to the oil-bearing formation such drilling (which manifestly costs a large sum) shall operate as a full liquidation of all future rentals under the lease."

In Stock, et al. v. Virginia-Kentucky Oil Co., et al., 198 Ky. 527, the lease contained the provision: "It is agreed that the completion of said well shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term of the lease." It was pointed out in that opinion that the drilling of an oil well—an expensive operation—is a sufficient consideration to support a lease for a term of years, in view of which the court said: "We see no reason why the parties might not stipulate that the drilling of such a hole should operate as a liquidation of all rentals for the balance of the term and the parties be bound thereby. There is nothing in such an arrangement contrary to public policy." And it was decided that the drilling of a dry well into the oil-bearing sands not only operated to defeat the forfeiture clause, but was also, according to the terms of the contract, a complete liquidation of the rentals, and kept the contract of lease intact for the term of years stipulated therein.

The lease under consideration was for a term of five years. It required the lessee to drill and complete a well on the premises within six months from the date thereof,

or to pay a stipulated rental thereafter until a well was drilled. It also provided that the "completion of a well on and in the leased territory shall be and operate as a full liquidation of all rentals under this provision during the remainder of the term of this lease." This is substantially the same provision as those contained in the leases involved in the two last mentioned cases. A well was drilled and completed, though it proved to be a dry well. This service was rendered at a very considerable expense to the lessee. It was incurred in exploring the leased property, and, although the exploration was not profitable to the lessor, it involved a large expenditure and was a sufficient consideration for the stipulation that it should be in full liquidation of all rents for the term of the lease. The parties agreed that it should constitute a liquidation of those rents, and this agreement, under the two recent cases just referred to, operates to defeat a cancellation of the lease.

For the reasons stated the judgment is reversed and the cause remanded for proceedings consistent herewith.