## Southern Oil Company, et al. v. Frazier, et al.

(Decided January 20, 1925.)

### Appeal from Magoffin Circuit Court.

1. Mines and Minerals—Completion of Dry Well is Complete Liquidation of Rentals Under Lease.—Under oil lease requiring completion of well within stipulated time or payment of rental, drilling of well into oil-bearing sands, though it be dry, is complete liquidation of rentals.

2. Mines and Minerals—Drilling 400 Feet to Gas-Bearing Sands Held Not Liquidation of Rentals Due Under Lease nor Sufficient to Prevent Cancellation.—Lessee's drilling of three wells 400 feet deep to gas-producing sand held not drilled to oil-bearing sand, nor sufficient to liquidate rentals due under lease, or preclude cancellation of lease for failure to develop or pay rental.

J. B. ADAMSON and CALLOWAY HOWARD for appellants.

H. H. RAMSEY, D. C. BROWNING and W. R. PRATHER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

On November 10, 1916, J. M. Frazier and wife conveyed to the Southern Oil Company all the oil and gas in a tract of land in Magoffin county on which they resided, together with the exclusive right to operate and drill for oil and gas thereon, etc. The lease contained this provision:

"To HAVE AND TO HOLD the interest hereby conveyed unto said grantee, for the term of ten years from the date hereof and as much longer as oil or gas is produced in paying quantities, yielding and granting to the grantor the one-eighth part of all the oil produced and saved from the premises, delivered free of expense into tank or pipe line to grantor's

credit. Grantee agrees to complete a well on said premises within twelve months from date hereof, or pay the grantor eighteen and 25/100 dollars each three months thereafter in advance until said well is completed or this grant surrendered, which grantor hereby agrees to accept. The drilling of such well, productive or otherwise, shall be full consideration to the grantor for grant hereby made to grantee, with the exclusive right to drill one or more additional wells on the premises without payment of additional rental."

At the time the conveyance was made there were three wells which had been bored about four hundred feet deep, a few miles from this property, which were producing gas and were being used for lighting and heating purposes of the town of Salyersville. Several deeper wells had been bored but had struck nothing. The grantees before making the contract had had an experienced oil man, who had been very successful in locating oil, to go over the ground. This expert after examining the lay of the land concluded that this land lay near the bottom of the anticline known as the Ivyton Dome and that oil would reasonably be found there in the same sand in which gas had been found in the three wells above referred to. Acting upon this idea the lessees in January, 1918, put down a well on Frazier's land about four hundred feet into this sand. They obtained a small amount of low gravity black oil but not enough to be valuable. They then put down a second well in March, 1918, on another part of the tract and about 1,500 feet from the first well, with the same result or practically so. They then moved their drilling machine off the place. Nothing further was done and on November 21, 1918, Frazier gave them a written notice requiring them:

"To execute the said contract according to the intention of the minds of the parties at the time it was made, by commencing immediately, in good faith, to develop said property by drilling and continuing to drill for oil and gas into and through all of the gas sands therein and thereunder, and to operate the wells and pump therefrom the oil and convey same to market and sell and market same and pay over and account to said J. M. Frazier and Mary Frazier the money arising from one-eighth of the oil produced by said well or wells, and to immediately

continue development for oil and gas and market the same from the remainder of the said tract of land, or if you and each of you do not commence the development of the property and the marketing of the oil as herein requested we will ask a cancellation of said oil and gas lease, and institute proper proceedings for that purpose.''

Some correspondence ensued and in March, 1919, they put down the third well on another part of the farm about 1,500 feet from the first well, about 400 feet deep and with the same result.

The proof is conflicting as to what followed. The proof for the lessees is that Frazier then expressed himself as satisfied, saying that they had done all he could ask, and that the lessees told him that if upon further development it appeared that there was any use in drilling they would put down a deeper well. In August, 1919, a well was put down on the Arnett place, several miles from this property, about twelve hundred feet deep into the Weir sand. The proof of the parties is conflicting as to what then happened. The proof for the lessees is to the effect that the people who bored this well closed it without letting it be known what they struck and went out taking leases and that the value of the find was not known for something like a year. On the other hand, the proof for Frazier is to the effect that great oil excitement followed the boring of this well. On February 13, 1920, Frazier filed a suit against the lessees asking cancellation of the lease for failure to develop. On July 22, 1920, while this suit was still pending he executed a top lease to Samuel J. Patrick. On October 1, 1921, the suit he had brought to cancel the first lease was dismissed without prejudice and on October 4, 1921, he filed this suit for the same purpose. The defendant filed answer controverting the allegations of the petition. In the first paragraph they set up their deed alleging compliance with its terms and praying judgment quieting their title. A reply was filed controverting the affirmative allegations of the answer. Voluminous proof was taken and on final hearing the circuit court entered a judgment in favor of Frazier. The defendants appeal.

The rule is well settled in Kentucky that the drilling of a well into the oil-bearing sands under a contract like that above quoted is a complete liquidation of the rentals, though the well proved to be dry and produced no oil.

Bradshaw v. Hurt, 198 Ky. 38; Stock v. Virginia, &c., Oil Co., 198 Ky. 527; Unity Oil Co. v. Hill, 200 Ky. 651.

The testimony of the experts is uncontradicted that the sand, to which the three wells referred to were bored by appellees, was not the oil-bearing sand; that the oil-bearing sand is the Weir sand, which is from a thousand to twelve hundred feet below the surface and that no oil has been produced of any commercial value nearer the surface than this sand. In addition to this the proof is persuasive that it was known that oil had been struck in the Weir sand and that Frazier had been urging appellees to bore down to this sand before he brought his first suit and before the top lease was executed. Appellees took no steps to do this at any time; they were not personally before the court in the first suit, but they made no effort to get the controversy adjusted after that suit was brought and took no steps evincing a willingness to develop the property.

On the whole case the court concludes that no well was put down to the oil-bearing sand and that the circuit court properly entered the judgment complained of.

Judgment affirmed. Whole court sitting.