## Kies, et al. v. Williams, et al.

(Decided February 22, 1921).

### Appeal from Allen Circuit Court.

1. Minerals—Completion of Wells—Manner of.—An oil lease which requires the lessee to complete a. well or wells on the property within a given time or forfeit the lease is satisfied by the drilling of a hole in proper manner to the depth of the sand or formation in that district from which oil or gas is usually produced.

2. Minerals—Completion of Wells.—A completed well does not necessarily mean a producing well unless this intention is manifest from the lease contract.

3. Mines and Minerals—Contract for Oil or Gas Well—Construction.—Where an oil lease is in undeveloped territory and it is apparent from the lease contract that the parties to it contemplated the prospecting of the land to discover whether it contained oil or gas, any expression requiring the drilling of a well or wells in order to avoid a forfeiture of the lease will be satisfied by the drilling of a hole or holes of oil well size to the depth of the sand from which oil is usually taken in that general district.

BRADBURN & HARLIN, SIMS, RODES & SIMS and OLIVER & DIXON for appllants.

GILLIAM & GILLIAM for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This suit was commenced by appellees, Williams, et al., April 2, 1919, to obtain a cancellation of an oil and gas lease of date March 15, 1918, on a tract of 365 acres of land located in Allen county, on the ground that the lessees, Kies and Clinger, had failed to complete two oil wells on the premises within one year from the date of the lease in accordance with a clause thereof, forfeiting the lease unless "two wells shall be completed on the premises within one year from the date hereof." From the evidence it appears that the lessees began the drilling of the first well on the lease shortly after the lease contract was entered into, and completed this hole by drilling into the oil sand of that district Nov. 1, 1918. This was a dry hole. The second well was soon located and work begun on it and it was drilled into the oil sand on March 15, 1919, the day the one year period expired, and this is an oil producing well, though small. Since that time several other wells have been drilled on the lease, most of them producing oil in paying quantities, and there are now a number of pumping outfits, tanks, rigs and appliances on the premises, and the lease is regarded as a valuable one.

The case was prepared by the taking of a large volume of evidence, mostly on the questions as to whether the second well was completed within one year from the date of the lease, and whether it was an oil producer. The first one is admitted to be dry. The learned trial judge delivered a written opinion in which, after copying the forfeiture and rental clauses of the lease, he construed them to mean:

"That the lease was to terminate at the end of one year, unless two wells should be completed. If, however, no well should be completed before the expiration of the year, the lessees might still avoid the cancellation of the lease by paying in advance a certain rental, which would further extend the right to explore for oil. No rent would be due under the contract, in the event two wells should be completed. Merely drilling a well is not completing a well, and a well which has only a showing of oil, is not a completed well, no matter what might have been the expense, nor what may be its depth. There must be a discovery of oil in sufficient quantity to produce revenue, or be capable after the application of proper equipment, to produce revenue, from which the lessor, the owner of the royalty, would derive a financial benefit."

A judgment was entered cancelling the lease in part, largely if not entirely upon the supposed default in payment of the rentals, and Kies, etc., appeal. It therefore follows that a proper and just decision of this case involves a correct construction of the oil lease.

The oil lease in question contains the following clause: "Provided, however, that this lease shall become null and void and all rights of either party hereunder shall cease and determine unless two wells shall be completed on the premises within one year from the date hereof and a third well completed within two years from the date hereof." Appellees, Williams, et al., rely upon the foregoing forfeiture clause and the following rental clause for a cancellation of the lease. The rental clause reads: "The party of the second part shall after one year from date hereof, pay at the rate of three hundred and sixty-five dollars ($365.00) for each year, quarterly in advance, thereafter until oil is produced from the land hereof."

The rental clause is the next sentence in the lease following the forfeiture clause, but they relate to entirely different subjects and were intended for different purposes.

By the forfeiture clause the lease was to become void and all rights of either party thereunder cease and determine unless two wells were completed upon the premises within one year from March 15th, 1918, the date of the lease, and in case these two wells were completed within one year from such time, the lease should become and be null and void at the end of two years if the third well was not completed within that time from the date of the lease.

These were positive, effectual and unequivocal forfeiture clauses which gave to the grantee, Harris, and his successors in title the right to terminate the lease entirely, if these conditions were not kept and performed.

But the rental clause copied above neither adds to nor detracts from the forfeiture clause but relates entirely to another subject.

If two wells were completed on the premises within one year from March 15th, 1918, the date of the lease, appellees were not entitled to a forfeiture of the lease at the time of the commencement of this action, April 2, 1919, irrespective of the payment of rentals provided for in the rental clause quoted above.

The completion of the third well was not required under the lease until about a year after this action was begun, and no forfeiture was or could have been claimed on account of the failure to complete it at the time of the institution of this suit.

From the evidence we learn that the first well was drilled into the sand from which oil is produced in that district several months before the time limited in the lease, but it was non-productive of oil—a dry hole. The second well was drilled into the oil sand on the last day of the year in which appellants were to complete the two wells, and it was and is a producer of oil in quantities sufficient to be profitable to both lessors and lessees.

The trial court held the words "completed well" to mean a producing well, and not merely a well drilled to the depth required to reach and produce oil in that field, and further that hole No. 1 on the lease did not amount to a well within the meaning of the terms of the lease, and that hole No. 2, being a small producer, did not fulfill the requirements.

To this we can not consent. The first hole, though a non-producer, if drilled, as it is conceded it was, to the depth of the oil producing sand in that oil field, was a well within the plain intent and meaning of the forfeiture clause of the lease. To complete means to finish, accomplish that which one starts out to do. A completed oil well is one drilled to the formation or sand in which oil in that district is usually and commonly found, whether oil be found in the hole or not, unless a different meaning is expressed in the contract. Here no different meaning was expressed. Completed wells do not necessarily mean oil producing wells, for a well might be drilled to an unmeasurable depth and yet not produce oil. The parties to this lease contemplated only the development of the lease by the drilling of at least two wells in the first year so as to determine if the lands contained oil in paying quantities, and it was such prospect or test holes which grantees were required to drill in order to save a forfeiture. Hunt v. Garvin, 190 Ky. 472.

The purpose of the forfeiture clause was to force the lessees to immediately develop the property for oil by drilling to the oil sand in order that the lease might be tested and explored for oil and gas and if found the lessor might receive royalties, and also to protect the property from drainage by other oil wells drilled near its mar-

gin. Such precautions are safeguards against unnecessary and destructive delays in oil well drilling and are ofttimes the cause of prompt action on the part of the drillers. While forfeitures are not favored in law, oil and gas leases will be cancelled on proper application by the lessor when the lease contains a forfeiture clause similar to the one here involved, if its conditions have been violated. The parties so contracted, and being *sui juris* are bound thereby. Oil lease contracts are an exception to the general rule that deeds and other grants of land or an interest therein are to be construed in favor of the grantee and strongest against the grantor, for in these kinds of grants the rule is reversed and the entire lease and all its terms and especially forfeiture clauses are construed strongest against the grantee. Thornton on Oil and Gas 223; Monarch Oil & Gas Co. v. Richardson, 124 Ky. 607.

Notwithstanding this rule a forfeiture of a lease will not be adjudged if the terms of the lease have been kept, and as the two wells were completed within the one year period fixed by the lease there was no ground whatever for a forfeiture. Moreover, courts are very remiss to grant a forfeiture in a case like this where great hardship will necessarily result to the grantee who in apparent good faith has made large investments in improvements and thus made the property valuable by his efforts and expenditure of money. In purchasing the lease the grantees were out a large sum of money, to which must be added the cost of some ten wells drilled on the property, and a large amount of oil well machinery and supplies located on the premises.

The failure of the grantees to pay the rentals in advance did not, nor was intended, to work a forfeiture of the lease. The lease contract does not so provide; nevertheless it was the duty of the grantees to make such payment in advance, but their failure to do so did not operate to annul the lease. If the contract had contained a clause saying in effect that a failure to pay said rentals in advance would work a forfeiture of the lease, it would have been enforceable, but in the absence of such a clause the failure to pay the rentals when due did not have such effect. If the grantees should fail to pay the rentals in advance under the lease, the owner of the surface could maintain an action against them.

It does not therefore matter in this litigation that the rentals were paid in whole to Harris and by him tendered

after the due date to each of the actual joint owners of the surface. It would be otherwise if the lease contract had provided for a forfeiture of the lease for the non-payment in advance of the rentals provided therein. These rentals were also intended to hasten development, and to cause the lessees to surrender the lease in case no development was in good faith contemplated, in order to avoid the payment of rentals. No rentals would, however, become due under this lease if a producing well had been brought in on the lease before the expiration of the year, and when the lease began to produce oil in paying quantities the stipulated rentals ceased. A producing well, as here used, is one the product of which yields a royalty to the landowner, and not one in which oil is allowed to stand without being taken and prepared for market.

Wherefore the judgment is reversed with directions to set aside the order annulling and cancelling the oil and gas lease of date March 15, 1918, and to dismiss the petition.