(No. 20470.—

THE OHIO OIL COMPANY, Appellant, *vs.* JOSEPH J. REICH-
ERT, JR., *et al.* Appellees.

*Opinion filed April 23, 1931.*

KRAMER, KRAMER & CAMPBELL, for appellant.

E. W. KREITNER, and P. K. JOHNSON, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, the Ohio Oil Company, a corporation, filed its bill in the circuit court of St. Clair county against the heirs and devisees of Joseph Reichert, deceased, Eugene W. Kreitner, the H. & M. Operating Company, A. H. Hirsig, George W. Timberlake and Harry Petty, to restrain the cancellation of an oil lease, to prevent the drilling for oil by appellees on the real estate covered by the lease, for a decree finding that appellant has a valid lease on all of the property and that certain of the appellees had no right, claim or interest therein. There was a hearing before the chancellor, the bill was dismissed for want of equity, and an appeal was prosecuted to this court.

The main question upon this appeal is whether, under the evidence, the chancellor properly dismissed the bill for want of equity.

The evidence shows that on March 15, 1928, Joseph Reichert, who is now deceased, entered into an oil and gas lease for a term of three years with T. J. Collins, covering about 300 acres of land in St. Clair county. It contained

the following clause: "After lessee begins drilling on said lands he agrees to use reasonable diligence in the drilling of any or all wells which he may drill until oil or gas, or either of them, are found in paying quantities; and the lessee agrees that if he shall, for any reason, except those beyond his control, cease work on any well or wells that he may be drilling, the lessor shall have the right to demand, in writing, that such work be re-commenced on said well or wells within thirty days from the time such demand is made, and it is agreed by the lessee herein named that if he does not re-commence such work within the said period of thirty days that this lease shall be considered abandoned and void. * * * And in the event of such abandonment aforesaid, or when this lease becomes otherwise void by its terms, it is agreed by lessee that Eugene W. Kreitner, attorney, Belleville, Illinois, is hereby designated by the said lessee, his heirs and assigns, his power of attorney to release the said lease of record in accordance with the statute of the State of Illinois in such case made and provided." In August, 1928, Collins and his assigns transferred a three-fourths interest in the lease to appellant, and in August, 1929, assigned to appellant the other one-fourth interest. About September 15, 1928, appellant, Collins and his associates commenced drilling a well on the premises. It is claimed by appellant that the drilling produced a dry well. Appellees contend that if the drilling had been prosecuted as provided in the lease a paying well would have been produced. On July 12, 1929, Reichert died testate and his heirs and devisees were made parties defendant. Nothing further was ever done by appellant in the way of drilling on this land. On August 6, 1929, Collins received a letter from Kreitner in which Collins was notified that unless he complied with the terms of the lease by resuming drilling within thirty days the lease would be canceled. Collins referred this letter to appellant, and appellant notified Kreitner that it was not in default under the lease and had not ceased work on

the well. On September 25, 1929, the H. & M. Operating Company and A. H. Hirsig notified appellant by letter that they had obtained by assignment a lease which had terminated and that it was the intention of the operating company immediately to begin drilling on the land, and they asked for a log of the well drilled by appellant. On September 27, 1929, appellant replied to this letter, in which it notified the H. & M. Operating Company that appellant held a valid lease on the land and expected to maintain its rights under the lease; that if the operating company commenced drilling a well on this land it would do so at its own risk and with no permission from appellant; that appellant did not believe that the operating company would care to drill on the premises or require the log of the well already drilled. On October 2, 1929, appellant wrote a letter to the operating company in which it notified it to remove its drilling machine, pipes and other property from the leased premises and to cease all operations or work of every description.

The evidence shows that the well drilled by appellant and its associates was one of the first wells drilled in this territory. Since that time many wells have been drilled, some of which are producing and others are not. Seventeen producing wells are within a radius of one mile, thirty-one are within two miles of the well in question and five others are just beyond the two-mile zone. There are a number of wells near the village of Dupo. Three wells drilled east, four wells drilled south and one well drilled west of the premises in question were dry holes. The evidence shows that in this territory oil is found in the Trenton rock and is not found below salt water. In drilling this well the Trenton rock was reached at 726 feet and the drilling continued to a depth of 773 feet. The well was drilled about 15 feet into the Trenton rock on Thursday or Friday, when it was shut down until the next Tuesday to see if it would produce oil. After the well was drilled into the Trenton

rock samples of the drillings were taken out, washed and laid on the ground. These samples were first of a brownish color and they then got whiter as the well was deepened. The sand smelled of gas or oil, and at 12 to 15 feet in the Trenton rock there was a slight rainbow of oil. On Tuesday morning there were present Collins and Fisher, Fred G. Rapp, mayor of Columbia, Henry M. Koontz, a banker of Columbia, Austin Lacey, a well-driller, Denver Adams, appellant's farm boss, J. F. Reglin, appellant's division superintendent, Joseph J. Reichert, Jr., and several of Reichert's neighbors. The witnesses for appellant testified that when the well was bailed that morning there was no oil but there was merely a brownish scum, which floated on the top of the water. The well was then drilled deeper into the Trenton rock until salt water was struck, when appellant determined that it was a dry hole. Collins and Reglin testified that in their opinion it would have been useless to shoot the well. Rapp, Koontz, Claus, Lacey, Alspach and Bachelor each testified that they had seen wells, with a much better showing of oil than this one, which had been shot and that they did not make producing wells. Reglin, appellant's superintendent, with extended experience in drilling wells, and Baldwin, of the Snowden-Sweeney Company, with thirty years' experience, testified that in their opinion, under the circumstances detailed by appellant's witnesses with reference to the condition of this well, it would have been of no benefit to shoot the well.

On behalf of appellees, Joseph Reichert, Jr., testified that when the Trenton rock was struck there was a showing of oil; that the drillers ran the bailer, which had a capacity of about twenty-five gallons, and on each bailing they took a sample of sand, which was washed and contained a black, oily substance, and two handfuls of each sample were placed upon a board. The first samples of sand were very dark, with grains of black in them, and at last the samples were heavy and of a dark-brown color; that on the following

Tuesday, after the well was shut down, a number of bailings were made which showed one-third of oil; that there was oil on the outside of the bailer, and that a ditch had been opened from the well to a near-by creek and oil accumulated in it at low places. Harry Alexander, a neighboring farmer, testified that he saw the piles of sand or rock, the first two or three of which were white and the others darker, with black color, and then they became pink. The samples smelled strongly of oil. He saw oil streaks which spread thirty to forty feet down the ditch. Charles Eckert, a farmer, was there on Sunday. He saw oil in streaks on the outside of the bailer and saw the piles of sand which smelled of gas. The piles of sand were similar to samples which he afterwards saw taken from oil wells. Joe Stoll, a farmer, was there on Thursday night when drilling ceased. He saw oil dripping from the bailer. He did not see very much oil, but he stated that what he saw was oil. Hilda Cookson was there on Sunday. She saw oil on the bailer. She saw samples of the sand dark in color, like those taken from an oil well on her mother's place. Harry Alexander was there on Thursday and Tuesday. On the first occasion he saw samples of sand but paid little attention. One pile he noticed had an odor like oil. The samples were light in color. Later, after the well had been shut down, he saw the bailer lying on the ground with oil on it. There was no water in the ditch, and he saw black oil on the sides of the ditch, which extended down as far as he could see. Madge Alexander saw the bailer hanging from the cable with oil on it and she saw oil in the ditch. On cross-examination she stated that she did not know that it was oil but that it looked like oil and everybody was talking about its being oil. Oscar Thayer, a drilling contractor of three years' experience, testified that under the facts stated by Reichert the well should have been shot; that if there was a less showing—if there had been a mere scum on the water—the well should have been shot.

Hirsig testified that under the circumstances stated by Reichert the well justified being shot.

After the drilling was concluded, Reglin, the superintendent of appellant, and Adams, its farm foreman, went to see Reichert about some damage to the surface around the well. Reichert testified that Reglin told him that they could have made a small well—five or ten barrels—if they had shot it, but it would not have been a paying well. Reglin denied having made such a statement. In October, 1928, Reglin took a check for the top damage to Reichert. Reichert testified that on that occasion Reglin said they would return the lease and release it of record; that they would do no further drilling and were going to abandon the field; that no one would enter the field after appellant gave it up, and that he was satisfied there was no oil there.

Appellant contends that after the well in question which it started to drill was completed it was not required by the terms of the lease to drill other or further wells; that the lease required only diligence in drilling any well commenced; that it was only when it ceased work on any well that it might be drilling that the lessor had the right to demand a resumption of the work within thirty days; that the evidence showed it would have been useless to have shot the well in question; that appellant complied with the terms of the lease and was not in default; that no cross-bill was filed, and the court erred in decreeing that appellant's lease was void and of no force and effect. Appellees base their right to re-lease the premises solely on the ground that appellant violated the provisions of its lease which required it to use reasonable diligence in drilling the well in question until oil or gas was found in paying quantities, and that the lease to appellant was abandoned.

Whether appellant complied with the requirements of the lease in drilling this well and whether it later abandoned the lease were questions of fact to be determined from the evidence. The decree of a chancellor will not be reversed

upon questions of fact unless it is palpably contrary to the weight of the evidence. (*Koch* v. *Mraz,* 334 Ill. 67; *Needham* v. *Village of Winthrop Harbor,* 331 id. 523; *Fish* v. *Teninga,* 330 id. 160.) It has been held that a completed well is one drilled to the formation in which oil in that district is usually and commonly found, whether it is found in that hole or not. (*Frost* v. *Martin,* 203 S. W. (Tex.) 72; *Kies* v. *Williams,* 190 Ky. 596, 228 S. W. 40; *Bradshaw* v. *Hurt,* 198 id. 38, 247 id. 1113.) In *Unity Oil Co.* v. *Hill,* 200 Ky. 651, 255 S. W. 151, the well showed a rainbow of oil but it was not shot. It was not a producing well. It was held that the evidence of oil was not such as to indicate to a reasonably prudent man that the shooting of the well would have resulted in the production of oil and that shooting the well could not reasonably be expected to make it a producing well. It has been held that neither party to an oil lease is the arbitrator as to the extent to which or the diligence with which the operation shall proceed; that both are bound by the standard of what would be reasonably expected of the operator under the circumstances, having regard to the interests of both parties. *Paraffine Oil Co.* v. *Cruse,* 14 A. L. R. (Okla.) 952; *Prince* v. *Standard Oil Co.* 147 La. 283; 40 Corpus Juris, 1065.

Under the provisions of the lease in question all appellant was required to do was to use reasonable diligence in the drilling of this well until oil or gas was found in paying quantities. Appellant did not guarantee that it would find oil or gas in this well in paying quantities. It merely agreed that it would use reasonable diligence in such search. The mere fact, as shown by appellees' witnesses, that some oil was found in this well was not sufficient to show that oil in paying quantities might be found. The question as to whether the well should have been shot depended upon the facts in evidence. The preponderance of the evidence on this point from witnesses of long experience in drilling oil wells is that the shooting of this well would not have pro-

duced a paying well. It might have produced a small well, but such a well would not comply with the terms of the lease. On the other hand, the witnesses who testified for appellees were not experts on that question, and most of their evidence was that they saw evidences of oil on the bailer, around the well and in the ditch. When all of the evidence is reviewed in the light of the surrounding facts we do not think it showed that appellant did not use due diligence. It drilled into the Trenton rock and found very little evidence of oil. It then drilled into the salt water below the Trenton rock. The undisputed evidence is that oil is not found below salt water and that if oil was to be found in paying quantities it must have been found in the Trenton rock. The evidence shows that to have shot the well would have cost about $280. If oil had been found appellant would have had a seven-eighths interest in the oil and the appellees would have had a one-eighth interest therein. From a financial standpoint appellant had several times more interest in producing an oil well than the land owners. The well was drilled at appellant's expense. To have shot the well would have cost appellees nothing. There can be no reason why appellant did not want to produce oil from this well if such could be done. After it had drilled into the Trenton rock there was no good reason apparent why it would not have paid the further expense of shooting the well if the shooting would have been of any benefit. The presence of oil around the well and in the ditch might have been explained on the ground that the evidence shows that considerable oil was brought there in barrels in the prosecution of the work. The evidence entirely fails to support the finding of the decree that the work was not prosecuted with diligence as provided in the lease.

It is next contended that the evidence shows that appellant abandoned the lease and agreed to release it of record. The only evidence of an intention to abandon is the statement of Reichert. There is no evidence that Reglin had

any authority from appellant to make any such statement. Appellant offered to show that Reglin did not have authority to surrender this lease, but the court improperly refused to admit the evidence. The lease made no provision for the drilling of any well after the first well. It provided the time within which the first well should be drilled but made no further provision. Therefore if appellant drilled the first well as provided in the lease it was under no obligation to drill other wells, and the mere fact that it removed its driller from the land in question did not support the contention that it abandoned the lease.

The decree is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*