Minerva Oil Company, Appellee, v. Sohio Petroleum Company, Defendant. Adella B. Breeze et al., Appellants.

Term No. 48024.

Opinion filed January 17, 1949. Released for publication March 1, 1949.

CHARLES R. MYERS, of Vandalia, for appellants.

WILL M. ALBERT and WILLIAM FLOYD SONNEMANN, both of Vandalia, for appellee; BAKER, LESEMANN, KAGY & WAGNER, of East St. Louis, of counsel.

MR. JUSTICE BARDENS delivered the opinion of the court.

This is an action for declaratory judgment to construe an oil and gas lease. On July 18, 1938, the defendants appellants, Adella B. Breeze and others executed an oil and gas lease as lessors, to the Minerva Oil Company, a corporation, the plaintiff appellee, as lessee.

Under the lease the lessee covenants:

"(1) To deliver to the credit of Lessors, free of costs, in the pipe line to which Lessee may connect wells on said land, the equal three-sixteenths ($\frac{3}{16}$ths) part of all oil produced and saved from the leased premises, so long as the wells drilled thereon shall produce an average of ten barrels per day per well for each thirty day period.

"(2) To deliver to the credit of Lessors, free of cost, in the pipe line to which Lessee may connect wells on said land, the equal one-eighth ($\frac{1}{8}$th) part of all oil produced and saved from the leased premises, so long as the wells drilled thereon shall produce an average of less than ten barrels per day per well for each thirty day period."

The lessee drilled three times on said land for oil and gas. Well No. 1, which penetrated the Benoist sand, was a dry hole. Oil was produced for a short period of time from well No. 2, whereupon it was plugged. Well No. 3 has been and still is a producing well.

The period of production in question is from and includes April 1945, to March 1948. During this period, at no time did the monthly oil production of the leased territory reach 900 barrels. The lessees claim that they have drilled three wells and that thereby, under the lease during the above period, $\frac{1}{8}$th of said oil should go to the lessors. The lessors claim that for purposes of determining the royalty due them, only producing wells are included, thereby entitling them to $\frac{3}{16}$ths of the oil so produced, since well No. 1 is a dry hole.

All of the oil in question has been delivered to the Sohio Petroleum Company, who, in the months of April, May, June, July, and August 1945, delivered to said lessors $\frac{1}{16}$ths of the oil so produced. However, said Sohio Petroleum Company, who was made a party defendant, is now holding $2,253.07, which is $\frac{1}{16}$th of the amount produced from September 1, 1945, to February 1, 1948.

With the facts as above stated, the lessees filed suit for declaratory judgment claiming that the correct construction of the lease would include well No. 1 in determining the royalty of the lessors. The trial court upheld the lessee's construction and granted relief in accordance with such holding. From this decision, the lessors appeal, bringing to this court the matter in question.

The lessors contend that because of the peculiar nature of the oil and gas industry there exists a relationship of special trust and confidence between the lessors and lessee and that said lease is strictly construed against the lessee. Such is not the law in

Illinois. In this State, an oil and gas lease is subject to the same rules of construction as any other contract. No relationship of trust or confidence exists between the lessors and lessees of such a lease. *O'Donnell v. Snowden & McSweeney Co.,* 318 Ill. 374; *Hein v. Shell Oil Co., Inc.,* 315 Ill. App. 297.

The sole question before this court is the interpretation of the first and second sections of this lease. There it is important to note the language used is, "so long as the *wells drilled* thereon shall produce an average" of ten or less than ten barrels per day per well. The word "well" or "wells" is frequently used in the instrument and the expression "well drilled" appears in several instances. In paragraph two of the fourth section of the lease, the following wording is used, "Should the first *well drilled* on said premises be a producing well, etc." Again in the succeeding paragraph is the wording, "Should the first *well drilled* on the above described land be a dry hole, etc." It seems clear to us that the designation "wells drilled" as used in the first and second sections includes and means any well that has been drilled to the proper depth be it producing or not. The phrase characterizes what was done by the lessee and has no reference to productivity. When the parties were dealing with productivity, the lease used apt language to demonstrate that meaning, as is above set out.

This court is unable to find Illinois decisions on the above question, but our position is supported by decisions of sister states. Many such courts have consistently held that in construing oil and gas leases, the word "well" refers to the boring of a hole reaching to the oil producing sand of that area or to the depth where oil is usually found whether oil be found in the hole or not. *Kies v. Williams,* 190 Ky. 596, 228 S. W. 40; *Frost v. Martin* (Tex. Civ. App.), 203 S. W. 72; *Chapman v. Ellis* (Tex. Civ. App.), 254 S. W. 615;

*Federal Betterment Co. v. Blaes,* 75 Kan. 69, 88 Pac. 555; *Parish Fork Oil Co. v. Bridgewater Gas Co.,* 51 W. Va. 583, 42 S. E. 655; *Hall v. McClesky* (Tex. Civ. App.), 228 S. W. 1004.

The decision of the circuit court of Fayette county is hereby affirmed.

*Judgment affirmed.*

CULBERTSON, P. J., and SCHEINEMAN, J., concur.