Joseph V. Dunbar, Plaintiff-Appellee, v. Carl Olson et al., Defendants-Appellants, and W. W. Shaffer, Defendant.

Term No. 52–O–8.

filed January 30, 1953. Rehearing denied February 24, 1953. Released for publication March 4, 1953.

CRAIG & CRAIG, of Mt. Vernon, for appellants.

ROBERT G. BURNSIDE, of Vandalia, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment order entered in the circuit court of Effingham county, finding that appellants, Carl Olson, Marjorie Johnson, Bert Ketchem, A. A. Tomey, Oral N. Gines, R. H. Gines, N. W. Strange, Virgil Hudson, John Garrett, Mildred Garrett, Gustave M. Risacher and Thomas J. Daily (hereinafter called defendants, other than defendant Shaffer) were mining partners with W. W. Shaffer, another defendant who does not appeal, and in favor of appellee, Joseph V. Dunbar (hereinafter called plaintiff), in the sum of $904.83 and costs of suit. The judgment was entered as against all defendants, including Shaffer, jointly and severally.

This cause involves a claim by plaintiff, asserted in his complaint, for services furnished in the matter of supplying labor and materials upon a certain oil well, which plaintiff asserts was owned and operated by

defendants who were associated together as a mining partnership for the purpose of producing oil pursuant to an implied agreement that the costs and the proceeds would be divided among the defendants in proportion to their holdings. The evidence discloses that the arrangement of defendants was a so-called typical oil well arrangement by the terms of which the defendant, W. W. Shaffer, who owned an interest in the two wells drilled on the lease, was in charge of and supervised the lease operation and, personally, was billed by the plaintiff for services performed in connection with the well on the premises. Both wells on the leased premises had been drilled by Shaffer's organization. The remaining defendants lived at considerable distance from the leased premises and apparently had purchased so-called ''working interests'' in the lease. They knew nothing about the operations other than such information as was given to them by Shaffer. The defendants other than Shaffer were not oil men and possessed no skill or knowledge concerning development or operation of oil properties, and were all engaged in different businesses and lived many miles from the scene of operation. They had nothing to do with the operation of the property, which was done exclusively by Shaffer, and were in fact, unaware of its performance and had nothing to do with the making of the contract. The only evidence of interest on part of said defendants was by reason of ownership of a small interest in the lease. No credit was extended to them, nor was there any reliance on their ability to pay under the record in this cause. There was in fact no showing of an actual joint operation of the well.

There is no dispute as to the liability of W. W. Shaffer, individually, but the basic question which arises in this cause is whether or not a mining partnership existed of such a nature as to impose upon the individual defendants, other than Shaffer, an individual lia-

bility to pay for work done on the leased premises which was not specifically directed by them and of which they had no knowledge.

It is not disputed that there was a joint ownership of the leased premises and that the owners were associated by reason of the ownership of such fractional interest in the leased premises, and were co-tenants with one another. There is, likewise, no question but that Shaffer actually operated the leased premises and was obligated personally, and that the plaintiff made the contract relating to the services with Shaffer, with whom he was acquainted, and that he at least looked to the credit of Shaffer in connection with the performance of such services. In addition to this requirement it is apparent that plaintiff could have filed a lien as against the property within the time permitted by the statute, which was not done; or he could have protected himself by requiring payment in advance; or escrowing all funds to assure such payment. It appears that after the services were furnished, Shaffer received a bill from the plaintiff, addressed to Shaffer, individually. He thereafter included the amount of plaintiff's invoice in a report to each of the defendants and each of the defendants has remitted his proportionate share of such payment to Shaffer, but plaintiff has never been paid. It also appears that Shaffer had no special agreement with the remaining defendants establishing any formal partnership as between the parties.

 In a proceeding of this nature the burden is on the plaintiff to allege and prove by competent evidence that a mining partnership existed (Thornton Oil & Gas, Vol. 2, section 658), and whether a mining partnership in fact existed depends on the acts and conduct and intent of the parties. A mere tenancy in common, or joint ownership of the property, does not make the owners partners, and the acquisition of inter-

est in the leasehold estate by defendants other than Shaffer made them tenants in common only (Summers Oil & Gas, Perm. Ed., Vol. 4, section 723, page 150; *Tuck v. Downing,* 76 Ill. 71, 83; *Hand v. Allen,* 294 Ill. 35, 53). The owner of a so-called working interest in an oil and gas lease has a duty to share in the expense in proportion to his interest, which is consistent with his co-tenancy relationship, but he does not become a mining partner by virtue of this fact (Summers Oil & Gas, Perm. Ed., Vol. 4, section 723, page 152). Before a mining partnership exists it must be shown not only that there is a joint ownership of the property, but also a joint working and a joint operation of the lease involved, which must be shown by competent evidence (Summers Oil & Gas, Perm. Ed., Vol. 4, section 922, page 145). By joint operation is obviously meant that each of the joint owners must have some choice and participation in control and management. In the instant case there is no evidence of joint operation and reliance seems to be solely on the circumstance of joint ownership. As we have also observed previously in this opinion, since plaintiff did not rely on the credit of defendants, other than Shaffer, and did not extend credit to them, the other defendants could not be liable personally to plaintiff even though they may have received benefits of the transaction (*Kinne v. Duncan,* 315 Ill. App. 577; *Watt v. Kirby,* 15 Ill. 200, 202).

It is apparently the conclusion of the courts and authorities in the field of oil and gas law, that because of the uncertainty of mining operations, few persons are willing to risk their means in such an undertaking, and that interests owned by persons differ in amount as each is able to furnish means or is willing to take the risks, and that these interests are constantly being assigned and strangers are being injected into the ownership, so that it would be unjust to subject each proprietor to personal liability which might sweep

away all his property in an undertaking created against his consent by those who could become members without his knowledge and against his wishes. The individual proprietor deserves to be protected against unauthorized acts of others and at the same time the claims of creditors should be properly secured to insure a successful working of leased premises. As we have indicated, the filing of liens or other direct proceedings would be available to the creditor. In absence of any formal mining partnership or joint operation, or joint working of the oil lease by the co-tenants other than Shaffer, there appears to be no basis for imposing a personal liability upon them. We have not been directed to any precedent in this State in which a mining partnership is said to arise simply from the circumstance of joint ownership, or under facts such as exist in the instant case. We have considered the fact·that two wells had been drilled upon the leased premises, but the defendants never actually engaged in the management of the lease and so far as the record discloses never intended that a mining partnership relationship should in fact exist. Certainly no mining partnership existed in the beginning when the assignments of the working interests were first acquired, and when the first well was drilled. It could hardly have arisen when the second well was drilled, since defendants knew nothing about the second well, did not in fact consent to it, and had nothing directly to do with the operation of the property.

Under the facts and circumstances in this case the entry of judgment as against the individual defendants, other than defendant Shaffer, was improper. The judgment against the defendants, other than Shaffer, should not have been entered and this cause will be reversed and remanded with directions to vacate the judgment order as against the individual defendants, other than Shaffer, and to enter judgment only as

against defendant, W. W. Shaffer, for amounts due plaintiff, as shown by the record.

*Reversed and remanded, with directions.*

BARDENS, P. J. and SCHEINEMAN, J., concur.

Opinion filed January 30, 1953. Rehearing denied February 24, 1953. Released for publication March 4, 1953.

CRAIG & CRAIG, of Mt. Vernon, for appellants.

ROBERT G. BURNSIDE, of Vandalia, for appellee.