ROBERT M. YOKEL *et al.*, Plaintiffs-Appellants, v. THOMAS M. HITE, Defendant-Appellee (Paul Cash *et al.*, Defendants).

Fifth District    No. 5—02—0674

Opinion filed April 7, 2004.—Motion to publish granted May 6, 2004.

Samuel L. Fieber, of Albion, for appellants.

William C. Illingworth, of Rhine, Ernest & Vargo, of Mt. Carmel, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiffs, Robert, Mary, and Frank Yokel, appeal an order striking, with prejudice, three counts of their complaint which alleged that the defendant Thomas M. Hite, who was the operator under an agreement unitizing several neighboring oil and gas leases, had breached fiduciary duties he owed to the plaintiffs. The trial court found that the counts failed to allege facts from which it could find that Hite owed the plaintiffs a fiduciary duty. We affirm the trial court's ruling.

## I. BACKGROUND

The instant dispute involves an oil and gas lease and a unitization agreement that are more or less typical, with one somewhat unusual provision in the unitization agreement. In an oil and gas lease, the royalty interest is the portion of the proceeds that the landowner is entitled to be paid. In a typical lease, that portion is one-eighth. 38 Am. Jur. 2d *Gas & Oil* § 215 (1999). The operator's interest—which is called the "working interest"—is that portion of the oil and gas proceeds remaining after the landowner or other royalty owners are paid their royalty interests. *People ex rel. Harris v. Parrish Oil Production, Inc.*, 249 Ill. App. 3d 664, 666, 622 N.E.2d 810, 813-14 (1993). The working interest is typically seven-eighths. See *Harris*, 249 Ill. App. 3d at 666-67, 622 N.E.2d at 814. The costs of exploring, drilling, and recovering the oil or gas are deducted from the working interest (38 Am. Jur. 2d *Gas & Oil* § 35 (1999)), which is typically seven-eighths. Because both the working interest and the royalty interest are property, portions of either may be transferred. 38 Am. Jur. 2d *Gas & Oil* § 215 n.73 (1999). An overriding royalty interest is created when a portion of the working interest is transferred from the oil and gas operator to either the landowner or a third party. An overriding royalty, like a royalty interest, is not subject to the costs of recovering oil and gas (or the risk that none will be found). 38 Am. Jur. 2d *Gas & Oil* § 215 (1999).

In 1979, the plaintiffs in the instant action executed an oil and gas lease permitting a company called Modern Explorations to explore and drill for oil on their property. Pursuant to the lease, the plaintiffs retained a one-eighth royalty interest in any oil recovered. At approximately the same time, Modern Explorations entered into an oil and gas lease for at least one neighboring property, which later became part of the unit created by the unitization agreement here at issue. The plaintiffs later acquired a one thirty-second overriding royalty interest under their lease.

In 1988, the plaintiffs executed a unitization agreement with several adjoining oil and gas leases to create the Yokel-Wade Unit with Midnight Holdings as the sole operator. It is not clear from the record, nor relevant for our purposes, whether Midnight Holdings acquired Modern Explorations' interests in the unitized leases prior to the unitization. Pursuant to the unitization agreement, the plaintiffs Frank and Robert Yokel, as well as several other named individuals (some of whom are defendants in the instant action), owned small shares of the working interest in the oil produced from the Yokel-Wade Unit. Although created in the manner of an overriding royalty interest, these shares were deemed shares of the working interest, and unlike the usual overriding royalty interest, they were subject to the operator's costs in producing the oil. In their brief, the plaintiffs refer to this portion of the working interest in the Yokel-Wade Unit as a "nonoperating working interest."

In 1995, Midnight Holdings transferred its interest in the Yokel-Wade Unit to the defendant Thomas M. Hite and his company, Hite Operating Company. At that time, Hite was also the operator on several oil leases adjacent to the Yokel-Wade Unit.

On May 1, 1997, the plaintiffs filed a complaint seeking a declaration that the leases in the Yokel-Wade Unit had been forfeited for nonproduction. On November 6, 1997, the plaintiffs filed an amended complaint. On November 10, 1999, they filed a motion for leave to file their second amended complaint, and the court granted leave on November 23, 1999. The second amended complaint contained 10 counts and sought the appointment of a receiver, as well as damages for a breach of express covenants in the unitization agreement, a breach of the prudent operator standard, a breach of fiduciary duties, and damage to growing crops. On December 15, 1999, the defendants filed a motion to dismiss the second amended complaint. On April 6, 2000, the trial court ruled that counts VI through VIII, which alleged a breach of fiduciary duties, failed to state a claim upon which relief could be granted, and the court ordered them stricken with prejudice. However, the court denied the defendants' motion regarding the remaining counts.

On May 6, 2002, immediately before trial, the plaintiffs made an oral motion to dismiss counts I through V and count IX of their complaint. Their motion was based on an allegation that they were unable to procure a necessary expert witness in time for trial due to the fact that only the defendants knew the witness's identity. The court initially denied the motion; however, when the plaintiffs moved to dismiss the counts with prejudice, the court granted the motion. This left only count X, seeking compensation for damage to the grow-

ing crops. The case proceeded to trial on that count alone, and the court entered a judgment for the defendants. After the trial court denied their motion to reconsider, the plaintiffs filed this appeal, seeking a review of the trial court's order striking the three counts alleging a breach of fiduciary duties. They do not appeal the judgment against them on count X.

## II. ANALYSIS

The plaintiffs argue that the trial court erred in finding that no fiduciary relationship existed between the parties. In so arguing, they contend that (1) a fiduciary relationship between the parties arose due to the fact that Hite had sole discretion to determine where oil wells were to be drilled and which wells were to be used for production and which for injection (a process whereby water is injected into the well to move the oil under producing wells) and (2) a fiduciary relationship exists as a matter of law between an operator and the owner of a nonoperating working interest because they are involved in a joint venture. We find no merit to either of these contentions.

■ Illinois courts have repeatedly held that no fiduciary relationship arises as a matter of law merely due to the parties' relationship as lessors and lessees under an oil and gas lease. *O'Donnell v. Snowden & McSweeny Co.*, 318 Ill. 374, 378, 149 N.E. 253, 255 (1925); *Minerva Oil Co. v. Sohio Petroleum Co.*, 336 Ill. App. 372, 375, 84 N.E.2d 167, 169 (1949); *Hein v. Shell Oil Co.*, 315 Ill. App. 297, 300, 42 N.E.2d 949, 951 (1942). However, as the plaintiffs correctly note, this does not end our inquiry. Rather, a fiduciary relationship may arise from the particular circumstances of the parties' relationship. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 672, 682 N.E.2d 314, 321 (1997). In determining whether the facts of a given case establish a fiduciary relationship, courts look to the following factors: (1) the disparity in age, health, mental condition, education, and business experience between the parties, (2) the degree of kinship between the parties, and (3) the extent to which one party entrusted the other with the handling of its business affairs. *Ransom*, 289 Ill. App. 3d at 673, 682 N.E.2d at 322. Parties to a business agreement such as that here at issue are presumed capable of guarding their own interests. *Ransom*, 289 Ill. App. 3d at 672, 682 N.E.2d at 322. Therefore, the party seeking to show the existence of a fiduciary duty must show that such a duty arose by clear and convincing evidence. *Ransom*, 289 Ill. App. 3d at 672, 682 N.E.2d at 321-22.

■ In the instant case, the plaintiffs contend that they were required to place complete trust in the defendants due to the fact that only Hite Operating Company was permitted by the unitization agree-

ment to recover oil from the property. This contention is unavailing, however, because it is a basic feature of any oil and gas lease that the operator has exclusive control over oil and gas production operations. See *Ohio Oil Co. v. Wright*, 386 Ill. 206, 217, 53 N.E.2d 966, 971 (1944), *overruled in part on other grounds by Thorpe v. Mahin*, 43 Ill. 2d 36, 42, 250 N.E.2d 633, 636 (1969). Where one party to a business contract trusts the other to do no more than fulfill its obligations under the contract, no fiduciary duty arises. See *Oil Express National, Inc. v. Burgstone*, 958 F. Supp. 366, 370 (N.D. Ill. 1997) (applying Illinois law).

The plaintiffs alleged in their complaint and assert on appeal that they and the defendants have a fiduciary relationship as a matter of law because they are "colessees" under the unitization agreement. The defendants contend that the plaintiffs mischaracterize their interests. Rather than being colessees, they contend, the owners of the working interest are tenants in common. See *Pure Oil Co. v. Byrnes*, 388 Ill. 26, 38, 57 N.E.2d 356, 361 (1944); *De Mik v. Cargill*, 485 P.2d 229, 231 (Okla. 1971). A tenancy in common with respect to oil rights does not give rise to a fiduciary relationship. *Pure Oil Co.*, 388 Ill. at 38, 57 N.E.2d at 361. However, the unitization agreement does refer to the holders of small shares of the working interest, including Robert and Frank Yokel, as "lessees" in one section. We need not determine the effect of this language because we do not find the nomenclature used to describe the relationship among the owners of the working interest to be dispositive. The plaintiffs have cited no authority for their assertion that being colessees gives them a fiduciary relationship with Hite. In fact, neither party cites to any authority discussing the status of colessees under an oil and gas lease, and our research has revealed none.

We can find no principled reason to distinguish between relationships among the co-owners of a working interest and relationships between operators and royalty or overriding royalty interest owners. In either case, only the operator may produce oil, and the interest holder's share of the proceeds will be dependant to some degree upon the operator's efforts. In either case, the operator owes the interest holder a duty to act as a reasonably prudent operator. *Ohio Oil Co. v. Reichert*, 343 Ill. 560, 567, 175 N.E. 790, 793 (1931). Indeed, the only difference between the plaintiffs' nonoperating working interest and an overriding royalty interest is the fact that the plaintiffs' interest is subject to the costs of recovering the oil. Such an interest might give a working-interest owner in the plaintiffs' position a greater interest in making certain the operator produces oil in an economically efficient manner than the owner of an overriding royalty interest might have.

However, we see no reason to elevate the operator's duty to act as a reasonably prudent operator to a fiduciary one merely because the plaintiffs' additional interest is subject to the operator's costs.

The plaintiffs, however, argue that the unitization agreement demonstrates that they and Hite were involved in a joint venture. Joint venture partners stand in a fiduciary relationship with each other as a matter of law. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 738, 616 N.E.2d 1224, 1236-37 (1993). The party who contends that a joint venture exists has the burden of proving that the parties intended such a relationship. *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 843, 591 N.E.2d 1384, 1389 (1992). We agree with the trial court that the plaintiffs failed to allege facts sufficient to sustain this burden.

We first note that prior to this appeal, the plaintiffs argued only that Hite's alleged operation of the Yokel-Wade Unit and adjacent leases as a *de facto* single unit gave rise to a joint venture. They contend for the first time on appeal that the actual unitization agreement gave rise to a joint venture, despite several prior opportunities to raise the argument. On July 5, 2000, the plaintiffs filed a motion to make the court's April 2000 order striking the three counts alleging a breach of fiduciary duties immediately appealable pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Although the trial court granted the order, the plaintiffs never filed an interlocutory appeal in this court, nor did they timely file their proposed questions of law for interlocutory appeal. However, they did file three proposed questions in the trial court in July, September, and October of 2001. Each time, the proposed question related to whether a joint venture arose due to the operation of adjacent oil and gas leases as a unit in the absence of a formal unitization agreement. Moreover, in their motion to reconsider, the plaintiffs did not address the issue at all. Thus, the plaintiffs have forfeited the argument that the unitization agreement itself gave rise to a joint venture and the fiduciary duties that accompany such a transaction. Even were the argument not forfeited, we would find it to be without merit.

A joint venture is an association of two or more persons to carry out a single enterprise for profit. The only significant difference between a partnership and a joint venture is that a joint venture relates to a single enterprise or transaction while a partnership encompasses a general business of a particular type. Thus, partnership laws govern joint ventures. *Herst v. Chark*, 219 Ill. App. 3d 690, 694, 579 N.E.2d 990, 992 (1991). Even in the absence of a formal agreement, the existence of a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture. *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 843, 591

N.E.2d 1384, 1389 (1992). When a court determines whether the parties intended a joint venture, the relevant criteria are (1) an express or implied agreement to carry on a joint enterprise, (2) a manifestation of that intent by the parties, (3) a joint proprietary interest, as demonstrated by the contribution of property, finances, effort, skill, or knowledge by each party to the joint venture, (4) some degree of joint control over the enterprise, and (5) a provision for the parties to share in both the profits and the losses of the enterprise. *O'Brien*, 227 Ill. App. 3d at 843, 591 N.E.2d at 1389.

Some of the elements of a joint venture are present in the unitization agreement here at issue. For example, the plaintiffs' ownership of a small fractional portion of the working interest means that they will share in both the profits and the losses of oil production, at least to a small extent. The plaintiffs contribute their real property to the enterprise while Hite contributes his skills and efforts. However, we find that other elements are absent, and in the absence of any one of the elements, a joint venture does not exist. *O'Brien*, 227 Ill. App. 3d at 843, 591 N.E.2d at 1389. The plaintiffs alleged in their second amended complaint that operating the Yokel-Wade Unit and the adjacent oil and gas leases as a *de facto* unit established the elements of a joint venture. However, they failed to allege any facts from which the trial court could conclude that they, Hite, or the adjacent landowners intended to carry on an enterprise in the nature of a partnership. A mere conclusory allegation such as this is insufficient to survive a motion to dismiss. See *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285, 735 N.E.2d 551, 557 (2000). Moreover, it is clear that neither the plaintiffs nor any of the adjoining landowners had any control over the day-to-day operations of oil production on the leases. Perhaps the most important element in establishing a joint venture is that of joint control and management. *Herst*, 219 Ill. App. 3d at 694, 579 N.E.2d at 992. In short, the arrangement looks like a typical oil and gas lease and not a partnership.

Although neither party discusses it, there is some authority in Illinois for the proposition that a unitization agreement may transform an oil and gas lease into a joint venture. In *Carroll v. Caldwell*, 12 Ill. 2d 487, 496, 147 N.E.2d 69, 74 (1957), the Illinois Supreme Court found that the parties to an oil and gas lease had gone "beyond the normal relationship" between a lessor and lessee in an oil and gas lease by jointly embarking on an effort to unitize several adjoining leases. There, an oil and gas operator held a lease on two adjacent parcels of land presumed to be owned by the same lessor, although the lessor's title to one of the parcels was in doubt. *Carroll*, 12 Ill. 2d at 490-91, 147 N.E.2d at 71. The operator and the landowner decided to

unitize their lease on the two parcels with some of the surrounding leases. *Carroll*, 12 Ill. 2d at 491, 147 N.E.2d at 71. During the unitization process, the operator discovered that the lessor did not have title to the second parcel of land. He therefore made a separate oil and gas lease with the party who did own that parcel. *Carroll*, 12 Ill. 2d at 492, 147 N.E.2d at 72. Thus, unlike the instant dispute, the dispute that arose between the parties related directly to the formation of the unit itself.

We find this distinction significant because the fiduciary relationship that accompanies a joint venture applies only to matters within the scope of the joint venture. *Holstein*, 246 Ill. App. 3d at 738, 616 N.E.2d at 1236-37. The *Carroll* court did not need to examine the scope of the joint venture that it found had existed, because the dispute related only to the formation of the unit, not its operation. It was thus a matter within the scope of the joint venture regardless of whether that included the operations of the unit. The *Carroll* opinion does not expressly state whether its holding applied to the operation of the unit as well as its formation. However, our examination of the court's reasoning and the rationale behind those cases holding that no partnership or joint venture normally arises from an oil and gas lease convinces us that the *Carroll* court merely found that creating the unit was a joint venture.

Before finding that the parties were partners in a joint venture, the supreme court first acknowledged and reaffirmed previous Illinois cases holding that neither a partnership nor a joint venture arises by virtue of joint ownership in an oil and gas lease. *Carroll*, 12 Ill. 2d at 496, 147 N.E.2d at 74, citing *Dunbar v. Olson*, 349 Ill. App. 308, 110 N.E.2d 664 (1953). *Dunbar* involved defendants who owned small fractional shares of the working interest in an oil and gas lease, much as the plaintiffs in the instant case. *Dunbar*, 349 Ill. App. at 310, 110 N.E.2d at 665. These defendants had purchased their shares of the working interest (*Dunbar*, 349 Ill. App. at 310, 110 N.E.2d at 665) but had nothing to do with the operation of the oil lease (*Dunbar*, 349 Ill. App. at 310, 110 N.E.2d at 666). The plaintiff brought suit for payment for services he had performed for the operator of the lease on one of the oil wells. *Dunbar*, 349 Ill. App. at 309-10, 110 N.E.2d at 665. He added the other working-interest owners as defendants, arguing that their liability for services rendered was predicated on the partnership the plaintiff argued arose from their agreement to share the costs and proceeds with the operator in proportion to their shares of the working interest. *Dunbar*, 349 Ill. App. at 310, 110 N.E.2d at 665.

The *Dunbar* court noted that the owner of a working interest has a duty to share in the cost of oil production. *Dunbar*, 349 Ill. App. at

312, 110 N.E.2d at 666. As previously noted, that is one feature of a joint venture or partnership. See *O'Brien*, 227 Ill. App. 3d at 843, 591 N.E.2d at 1389. The court found, however, that this one element did not transform a typical oil and gas lease into a partnership unless there was also evidence of the joint operation of the lease involved. The court observed that this obviously meant that each of the alleged partners must have some control over the management of the operation. *Dunbar*, 349 Ill. App. at 312, 110 N.E.2d at 666.

The *Dunbar* court explained the rationale behind its ruling as follows:

"It is apparently the conclusion of the courts and authorities in the field of oil and gas law[ ] that because of the uncertainty of mining operations, few persons are willing to risk their means in such an undertaking, and that interests owned by persons differ in amount *** and *** are constantly being assigned and strangers are being injected into the ownership, so that it would be unjust to subject each proprietor to personal liability *** in an undertaking [which could be] created against his consent by those who could become members without his knowledge and against his wishes." *Dunbar*, 349 Ill. App. at 312-13, 110 N.E.2d at 666-67.

Although we are concerned here with a benefit of a partnership or joint venture rather than the liability that could be incurred as a result of finding that such a relationship exists, we find it obvious that the benefit of the fiduciary relationship and the burden of joint liability are both part and parcel of finding that such a relationship exists. Thus, we find that the *Carroll* court could not possibly have intended to depart from this policy by finding that a joint venture can arise absent at least some control over operations by all the partners. With this premise in mind, we look at the supreme court's rationale for distinguishing the unitization agreement before it in *Carroll* from a typical oil and gas lease.

The *Carroll* court found that the unitization agreement manifested an intention of the parties to associate jointly because of a provision that the unitized area was to be operated as if it were one oil and gas lease. *Carroll*, 12 Ill. 2d at 497-98, 147 N.E.2d at 74-75. The court further found that the operator and landowner both had proprietary interests in the oil and gas underlying the parcels of land and that the unitization provided for each to share in the profits and losses of the operation of the unit. *Carroll*, 12 Ill. 2d at 497, 147 N.E.2d at 74. None of these features really distinguish the unitization agreement from a typical oil and gas lease, however. A typical lease evinces an intent of an operator and a landowner to associate jointly by virtue of their joint interest in the oil and gas and their contributions of skills and

property. A typical lease also provides a mechanism for the sharing of profits and, at least where the working interest has multiple owners, for the sharing of the costs. The *Carroll* court found one additional factor, however, that did set the unitization agreement before it apart from a typical oil and gas lease. Specifically, the court found that both the landowner and the oil and gas operator "had a right to determine if unitization should be attempted and a converse power of withholding agreement to it." *Carroll*, 12 Ill. 2d at 497, 147 N.E.2d at 74. Because finding a joint venture without this one element would violate the policy embodied in the earlier cases cited with approval by the *Carroll* court, we think it was crucial to the court's determination. The critical element of control does not normally extend beyond the formation of the unit to its operation once formed. For this reason, we find *Carroll* distinguishable from the case before us, where the operation of the unit, rather than its formation, is at issue. We find that the unitization agreement did not create a joint venture.

We note that the plaintiffs do not continue to press their earlier contention that the operation of the Yokel-Wade Unit and adjacent leases as one *de facto* unit created a joint venture. Moreover, were we to consider this argument, we would find the critical element of intent to be missing. Neither the plaintiffs nor Hite attempted to unitize the Yokel-Wade Unit with those leases, nor did any of the other lessors. Thus, we conclude that no joint venture arose under either of the plaintiffs' arguments.

## III. CONCLUSION

We conclude that the trial court properly found that the plaintiffs failed to allege facts sufficient to state a claim for breach of fiduciary duty. We therefore affirm the decision of the trial court striking counts VI, VII, and VIII of their complaint with prejudice.

Affirmed.

GOLDENHERSH and HOPKINS, JJ., concur.