NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 29, 2013[*]
Decided March 29, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1287

| | |
|---|---|
| ESTATE OF JOE BROWN, *Plaintiff–Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 C 7141 |
| ARC MUSIC GROUP, et al., *Defendants–Appellees.* | Harry D. Leinenweber, *Judge.* |

## O R D E R

Joe Brown, a bluesman, founded three Chicago record labels that recorded and copyrighted music during the 1940s and 1950s, including the songs "Dark Road Blues" and "This New Generation." He died in 1976. In 2008 his son, Michael Brown, began

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

investigating the recordings and became convinced that the estate (the successor in interest to the three companies) was owed royalties. On behalf of the estate, Michael Brown sued several music companies for copyright infringement, breach of fiduciary duty, unjust enrichment, and other claims related to his father's music. The court dismissed the complaint for failure to state a claim. We affirm.

According to the complaint, around 1949 Joe Brown owned and operated Lawn Publishing Company, the JOB Record Label, and Rule Record Label. In 1964 Lawn granted Frederick Music Company an exclusive license to publish, sell, and produce Lawn's catalogue in exchange for royalties. Michael Brown says that in 1976, Frederick Music stopped paying royalties, thereby breaching a fiduciary duty it owed to Lawn and unjustly enriching itself at the estate's expense. Brown also sought an accounting of Frederick Music and a constructive trust for the royalties he believed the estate was owed.

In 1996 Frederick Music assigned its rights under the 1964 agreement to Music Sales Corporation. According to Brown, after the 1996 purchase, Music Sales breached a fiduciary duty it also owed to Lawn by not paying royalties, concealing its actions, and unjustly enriching itself. Brown also sought an accounting of Music Sales and a constructive trust for the allegedly unpaid amounts.

Brown also sued the singer Willie Cobbs and Cobbs's assignee Katrina Music (collectively "Katrina") for unpaid royalties related to the blues classic "You Don't Love Me," which Cobbs wrote but co-owned with Joe Brown. Brown again included claims for fraud, unjust enrichment, and civil conspiracy, and again sought an accounting and a constructive trust.

Last, Brown sued Arc Music Group and Opus 19 Music ("Arc") for not turning over royalties from "This New Generation" and "Dark Road Blues," allegedly cowritten by Joe Brown and another songwriter. Brown accused Arc of filing copyright registrations for works owned by Lawn, JOB, or Ruler, and sued Arc for copyright infringement, as well as the same claims brought against the other defendants.

The district court dismissed Brown's complaint. Regarding the claims against Frederick Music, the court found them barred by the five-year statute of limitations; the court alternatively found that the complaint failed to state a claim for breach of fiduciary duty, fraud, unjust enrichment, accounting, conspiracy, and a constructive trust. As for the claims against Music Sales, the court concluded that they alleged only a contractual relationship between Lawn and Music Sales, and not a fiduciary duty, so any relief he was owed would be governed solely by that contractual relationship. The court also concluded that Brown failed to state a claim against Music Sales for fraud, unjust enrichment, and civil

conspiracy. As for the claims against Katrina, the court explained that Brown alleged no basis under which the company could be held responsible for royalties, since it was not party to the agreement between Lawn and Frederick Music. The claims against Katrina were also untimely, the court added. Last, the court explained that Arc, as coauthor of the named songs, could not be liable for violating the copyright. But the court considered the possibility that Arc might not have accounted to Brown—as joint-owner of the songs—for a share of any royalties, and thus allowed him 30 days to clarify and elaborate on his position for an accounting. But after 30 days Brown had filed only a motion to reconsider, which the court denied.

On appeal Brown first argues that the district court converted the defendants' motions to dismiss into motions for summary judgment by considering matters outside the pleadings without allowing him a reasonable opportunity for discovery. *See* FED. R. CIV. P. 12(d). Brown does not identify what outside material he thinks the court considered, but he might be referring to a 1968 settlement agreement between Frederick Music and Katrina that Katrina attached to its motion to dismiss. (Katrina had sued Frederick Music for the rights to "You Don't Love Me" after Lawn had licensed its rights to Frederick Music.) That settlement agreement declared Cobbs the sole author of "You Don't Love Me" and named Katrina and Frederick Music co-owners of the song. But Brown does not contest the district court's conclusion that the settlement agreement, which composed part of the court record from the Katrina–Frederick lawsuit, was a public record of which it could take judicial notice without converting the motion into one for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81, 1083–84 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases from other circuits).

The remainder of Brown's arguments challenge only the district court's dismissal of his claims against Frederick Music. Brown first asserts that he adequately pleaded the existence of a fiduciary duty between Frederick Music and Lawn because Frederick Music, who Brown says was the estate's publishing agent, had a responsibility to act on the estate's behalf. But Brown waived this argument by failing to allege any agency relationship in his complaint. *See Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010); *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008). Brown's complaint, rather, addressed only a business agreement between Lawn and Frederick Music, and in Illinois a business or contractual relationship alone does not create a fiduciary duty. *See Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748–49 (7th Cir. 2006); *Benson v. Stafford*, 941 N.E.2d 386, 397–98 (Ill. App. Ct. 2010); *Yokel v. Hite*, 809 N.E.2d 721, 725 (Ill. App. Ct. 2004). But Brown has not alleged the existence of any other circumstances between Frederick Music and Lawn that would establish a fiduciary duty. *See Autotech Tech.*, 471 F.3d at 749; *Benson*, 941 N.E.2d at 398; *Yokel*, 809 N.E.2d at 725.

Brown also vaguely contests the district court dismissal of his claim against Frederick Music for unjust enrichment but states only that Frederick Music retained royalty payments belonging to the estate. As the court noted, the parties' expectations were governed by the exclusive license granted to Frederick Music, and Brown's claims for unpaid royalties were of the sort contemplated by the contract. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Prignano v. Prignano*, 934 N.E.2d 89, 108 (Ill. App. Ct. 2010).

Last, Brown argues, through long quotations taken from uncited cases, that the district court wrongly dismissed his claim for copyright infringement against Frederick Music. But in his complaint, Brown alleged copyright infringement against only Arc. He may not assert new theories of recovery on appeal that he failed to raise to the district court. *See Fednav*, 624 F.3d at 841; *Domka*, 523 F.3d at 783. In any event, Frederick Music obtained the copyright to Lawn's catalogue when it entered into the exclusive license in 1964; as a result it could be liable for copyright infringement only by exceeding the scope of that license, *see* 17 U.S.C. § 101; *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774–75 & n.8 (7th Cir. 1996); *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007). But Brown does not suggest that Frederick Music's actions exceeded the license's scope.

To the extent that Brown's copyright claim against Frederick Music can be construed as a claim for breach of contract, the district court properly concluded that such a claim is barred by the 10-year statute of limitations in Illinois. *See* 735 ILCS 5/13-206. Nor is Brown entitled to equitable tolling because he has not shown that before 2008 he reasonably was unable to obtain the information necessary to sue for breach of contract or that Frederick Music actively concealed from him its wrongdoing. *See Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002); *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001).

AFFIRMED.