Estella Easterday, V. G. Leadicker and Mary Leadicker, W. B. Blankenship, Garold Woodard, V. A. Duke, Russell Curtis, W. L. Gruetzemacher, Jr., W. L. Gruetzemacher, III, Warren Rebman, Jerome Marks and Ann Marks, F. A. Caspar and Ruth R. Caspar and Clarence A. Bradford, Plaintiffs-Appellees, v. Grady Marchman, Venetta Marchman, LeMar Marchman and Glenys Marchman Fitzgerald, Doing Business as Grady Marchman Well Servicing Company, a Partnership, Defendants-Appellants.

Gen. No. 62–F–21.

Fourth District.

May 11, 1962.

Rehearing denied May 21, 1962.

Will M. Albert, Louis A. McLaughlin, of Vandalia, for appellants.

J. Richard Royal, of Vandalia, for appellees.

HOFFMAN, PRESIDING JUSTICE.

The plaintiffs in this case purchased from one Vaughn, the owner of an oil and gas lease, certain working interests in the lease and by an operating agreement appointed Vaughn their manager and attorney in fact to operate the lease. Vaughn assessed the plaintiffs, in accordance with their proportionate interests, for the expenses of the operation, and it is conceded that the plaintiffs were overassessed by Vaughn in this respect. The defendant partnership furnished material and supplies to Vaughn to be used

on said lease, which supplies and materials were not paid for.

The lease was unproductive for oil and gas, the wells were plugged and Vaughn directed the defendants to dispose of the salvage left on the lease to apply on the bills he owed them for material and supplies furnished. The plaintiffs, claiming that they were the owners of this salvage, and that Vaughn had no right to deliver the same to the defendant suppliers without their consent, brought this suit, both against Vaughn and the defendant suppliers, to recover their proportionate share of the value of the salvage.

The court referred the dispute to the master, and he recommended, after hearings were held and a stipulation of facts entered into, that a judgment be entered against Vaughn and the defendant partnership for the pro rata share of each of the plaintiffs in the salvage sold by the defendant partnership and applied by it to its account with Vaughn. The trial court entered a decree in accordance with the findings and recommendations of the master. The defendant Vaughn has not appealed and this appeal concerns only the judgment entered against the defendant partnership who were the suppliers of the materials used on the leasehold.

The documents under which plaintiffs acquired their interests in the lease were titled "Assignment of Oil and Gas Lease." In the granting clause, each plaintiff was granted an undivided fractional interest of the "working interest in and to the oil and gas lease, dated August 8, 1957, from Marchman Farms, . . . lessor, to . . . , insofar as said lease covers (certain property) . . . together with the rights incident thereto and the personal property thereon, appurtenant thereto, or used or obtained in connection therewith."

323

Several months after the assignments, plaintiffs entered into an operating agreement with Vaughn. It was expressed in the agreement that it was entered into "in order to provide for the management and operation of said lease . . ." The agreement provided that if oil or gas was found in commercial quantities, the expenses in connection with the development and production and marketing was to be borne by the *"owners of said lease"* in their respective proportions. Vaughn was appointed by the agreement as plaintiffs' "attorney to manage and operate *said lease.*" (Emphasis ours.)

The principal question raised in this case is whether or not the owners of a working interest in an oil and gas lease, who have paid their proportionate share of the assessments for the expenses and management of the drilling operation, have the right to the salvage left on the lease ahead of the supplier of said salvage who has not been paid by the operator.

It is the defendants' first contention that the plaintiffs had purchased only a portion of the oil and gas if and when it was produced; that the term "working interest" includes oil and gas only after it comes from the ground; and that, therefore, plaintiffs had no interest or title in the equipment or in the salvage. They admit that, if the plaintiffs had purchased a portion of the lease itself, there might be merit in their claiming that they owned the salvage. They say, however, there is no "working interest" in the salvage, as there is a "working interest" only in the oil and gas. In so contending, they make a distinction between ownership of a portion of a lease and ownership of a "working interest."

Defendants advance a second theory why they should not be held liable. They contend that Vaughn was the managing agent and attorney in fact selected by the plaintiff owners of the working interest; that

as their agent, Vaughn, in developing the well, purchased supplies from the defendant partnership and that as their agent he had implied authority to dispose of the salvage left on the lease in order to pay the creditors. At least, defendants say, the plaintiffs are estopped to deny the authority of their agent to dispose of such salvage and that this is particularly true in this case since plaintiffs were the owners of the "working interest" rather than "proprietors of the lease."

To determine the answer to defendants' first argument we must start with the case of Dunbar v. Olson, 349 Ill App 308, 110 NE2d 664, decided by this court in 1953. In that case, the facts were similar to those encountered here, except that the equipment supplier sued the owners of the working interests to recover for materials furnished, rather than, as here, claiming an interest in the salvage to recoup upon his advances to the operator. In the Dunbar case, this court reviewed the practical aspects surrounding oil ventures and pointed out that owners of working interests must have their losses limited, unless they are mining partners. And, by emphasizing that an equipment supplier could protect himself by filing a statutory lien, or by requiring advance payments, this court, in the Dunbar case, reached a solution which appears to be eminently fair to all parties concerned and practical enough to keep from stifling oil adventures. So, in Dunbar, this court held that the equipment supplier must look to his lien or to the operator—he could not proceed against the owners of the working interests, unless a mining partnership existed.

■ As in Dunbar, a choice must be made in this case between two innocent groups—the holders of the working interests who have put up the money and the equipment supplier who has furnished the materials. It is admitted by the defendant that if the

325

plaintiffs had an ownership in the wells, they would own the salvage, since they would own the equipment. And it is true that a lessee who develops a well is entitled to the equipment, and, at the end of his lease, may remove the same as his own property. 26 ILP Mining, Oil and Gas sec 75; 58 CJS Mines and Minerals, sections 180 and 212; Hardy v. Heeter, 120 Ind App 711, 96 NE2d 682. To engage in the controversy suggested by the briefs, as to the differences between the rights of a lessee and the rights of an owner of a working interest in such lease is needless, because we have had no cases called to our attention wherein any court or authority makes a distinction between the "working interest" and the "lessee's interest" in an oil and gas lease.

██ Because the supplier has an enforceable lien on all the equipment he has furnished to secure the payment of his account (see Ill Rev Stats 1961, c 82, § 71, et seq.), protection which no stranger who purchased a working interest has (note the extension of this argument in Dunbar), we believe that the Dunbar rule that the equipment supplier must look to his lien or to the operator, and not to the owners of the working interests, logically extends to the factual situation here, and we specifically hold that the salvage is the property of the owners of the working interests, and may not be claimed by the suppliers of the materials where there is no proof of a mining partnership.

Since there was no proof of such a partnership here, Vaughn had no authority to deliver the salvage to defendants, unless it can be found in the operating agreement, or unless plaintiffs are, by their acts, estopped to deny it. This brings us to defendants' second point.

The defendant suppliers argue that even if it is found that plaintiffs had some title to the equipment,

nevertheless, the operator was plaintiffs' agent and as such, had power to dispose of the salvage. In making this argument, the usual principles applicable to agency are cited. These include the rule that a principal is bound by the acts of his agent in the exercise of the powers within the apparent scope of his authority, unless the person the agent deals with has notice of the limitation upon the agent's authority. However, no cases dealing with oil and gas operating agreements were cited to point out what authority the operator-agent has to dispose of salvage.

██ A person who relies upon an agent's act has the burden of proving the authority upon which the agent acted if he is to charge the principal. This authority must be established by a preponderance of the evidence. It is true, of course, that a principal may be estopped to deny the authority if he has conducted himself in a manner calculated to mislead. 6 ILP Agency sections 124, 126 and 128. However, in order to rely on estoppel, the proof must be clear and unequivocal. Bovaird Supply Co. v. McClement, 32 Ill App2d 224, 238, 177 NE2d 430, 436.

█ In the present case, the written operating agreement contained no express authority to dispose of the salvage and the stipulation of facts doesn't recite anything which can be relied to support a theory of estoppel or implied authority. The defendants do not point to any evidence before this court, other than the operating agreement itself, to support their theory of estoppel. Because this question is primarily an issue of fact, we cannot reverse a trial court's findings unless they are clearly contrary to the manifest weight of the evidence.

█ For the reasons set forth we cannot subscribe to defendant's theory that Vaughn, the manager and operator, had the implied authority to dispose of the salvage to the defendants or that the plaintiffs are estopped to deny such authority.

327

Accordingly, we find no reversible error and the judgments appealed from are affirmed.

Affirmed.

SCHEINEMAN and CULBERTSON, JJ., concur.