LEO PIESZCHALSKI, Plaintiff-Appellee, v. JOHN J. OSLAGER *et al.*, Defendants-Appellants; Bi-Petro, Inc., Defendant (Leo Pieszchalski, Plaintiff-Appellee, v. Albert Middeke *et al.*, Defendants-Appellants; Farm Feeds Construction Company, Plaintiff-Appellant, v. Leo Pieszchalski, Defendant-Appellee).

Fifth District   No. 82—672

Opinion filed September 20, 1984.—Rehearing denied November 9, 1984.

George C. Lackey, of Lackey, Warner & Sauer, of Centralia, for appellants.

Clarence W. DeMoss, of Hohlt, House, DeMoss & Johnson, of Nashville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The issues presented by the instant appeal arise out of two appeals that were consolidated by this court on motion of appellants.

One appeal involves plaintiff Leo Pieszchalski's complaint to compel defendants John J. Oslager, Madelyn B. Oslager, Albert B. Middeke, and Helen L. Middeke to execute to Pieszchalski a release of all interest owned by them in an oil and gas lease. Pieszchalski is successor in interest of the original lessors, and defendants Albert B. Middeke and Helen L. Middeke are the assignees of a portion of the interest of John J. Oslager and Madelyn B. Oslager, original lessees. Pieszchalski also sought a declaration that the lease was terminated and that he was the owner of all equipment or personal property left upon the land in question. Additionally, Pieszchalski prayed that defendant Bi-Petro, Inc., be ordered to pay to him all proceeds of sale of oil and gas presently withheld by Bi-Petro. After judgment was entered in the trial court in favor of Pieszchalski in his suit against the Oslagers, Farm Feeds Construction Company, the Middekes' successor in interest, filed suit against Pieszchalski for a declaratory judgment and injunction, alleging its lease was still in full force and effect. The Oslagers, the Middekes, and Farm Feeds Construction Company appeal from the judgments entered against them and in favor of Pieszchalski, finding the lease to have been terminated. The Oslagers also appeal from the trial court's determination that the equipment left on the land was Pieszchalski's property. This issue was decided against Pieszchalski as to the Middekes and Farm Feeds, and Pieszchalski did not appeal from this decision.

In his August 1982 complaint, Pieszchalski alleged that his predecessors in title had executed the lease in question to defendant John Oslager in 1972; that the lease covered approximately 200 acres and was for a term of six months and for as long thereafter as oil or gas was produced from the land; that John Oslager, joined by his wife, defendant Madelyn Oslager, had assigned to the Middekes a one-fourth working interest in the lease so far as the same covered 10 of the 200 acres contained in the original lease; that no oil or gas had been sold or produced "in paying quantities" for over two years and that the lease had therefore terminated by its own terms; that defendants had failed and refused to execute a release of the lease as required by statute; and that defendants' "failure to produce oil or gas" for over two years further constituted an abandonment of the lease

and a forfeiture of equipment and personal property left behind on the land. A copy of the lease was appended to the complaint. The habendum clause of the lease (paragraph 2) provides: "Subject to the other provisions herein contained, this lease shall remain in force for a term of 6 months from this date (called 'primary term') and as long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land ***."

The Oslagers each entered a *pro se* appearance and general denial of the allegations of the complaint. Bi-Petro filed an answer denying that it presently withheld any proceeds from sale of oil or gas from the lease in question. By notice filed October 4, 1982, bench trial was set for October 26, 1982; the notice indicates that the parties were notified of this setting by mail. The Middekes filed their answer October 22, 1982, and on the same date moved for a continuance of trial.

The cause was called for bench trial on October 26, 1982, as set. A written order filed that date granted the Middekes' request for continuance of trial and stated that the Oslagers were notified of the trial date but did not appear personally or by counsel and that after considering the evidence the court found the lease to be abandoned and terminated due to "failure to produce [or] operate." The court found that Bi-Petro had no liability to Pieszchalski. A "decree" filed the next day states, *inter alia*, that no oil or gas had been "sold or produced in paying quantities" for over two years, resulting in both a termination under the terms of the lease and an abandonment of the lease; that the lease was of no force and effect; and that all equipment left on the land was Pieszchalski's property. The decree also recited that it was final and appealable and that there was no just reason to delay enforcement or appeal. A "certificate of mailing" filed October 27, 1982, indicates that the Oslagers and counsel for the Middekes were notified of the decree by mail. The Middekes and the Oslagers thereupon appealed to this court; however, Pieszchalski's motion to dismiss the appeal as to the Middekes was subsequently granted by this court.

After the Oslagers' appeal had been perfected, Farm Feeds Construction Company filed its complaint against Pieszchalski, seeking (1) a declaratory judgment that the lease in question was in full force and effect, and (2) an injunction preventing Pieszchalski from interfering with the operation of the lease and with the equipment located on the land. The complaint further alleged that the Middekes had assigned their entire working interest as to the 10 acres on which the well was located to Farm Feeds. This allegation was later established by introduction into the record of the pertinent documents. The latter case was consolidated with Pieszchalski's suit against the Middekes, which

was still awaiting trial.

After a bench trial in the consolidated cases, the circuit court found upon conflicting testimony that Oslager had not been prevented from operating the well between August 1980 and August 1982 or from taking steps to increase production. The court concluded that the oil and gas lease had terminated but that there had been no abandonment of the equipment and personal property on the land by the Middekes or by Farm Feeds. The court also found that due to the prior judgment against the Oslagers as to the equipment, Pieszchalski was owner of a three-fourths interest in said equipment, and Farm Feeds was owner of one-fourth interest in said equipment.

The Middekes and Farm Feeds appealed to this court and moved to consolidate their appeal and the record therein with the Oslagers' appeal and its record. This court granted that motion over Pieszchalski's objection.

The Oslagers contend on appeal that the trial court erred in disposing of Pieszchalski's claim against the Oslagers without adjudicating the claim against the Middekes. The Oslagers characterize the Middekes as "necessary" parties without whom the issues could not fully and completely be disposed of by the trial court.

A necessary party is an individual or entity having a present, substantial interest in the matter being litigated, and in whose absence a complete resolution of the matter in controversy cannot be achieved without affecting that interest. The determination of whether a party is necessary to a cause of action is controlled by the issues presented in the case through the pleadings and the evidence and not by the final outcome of the litigation. *Bovinett v. Rollberg* (1979), 73 Ill. App. 3d 490, 494-95, 392 N.E.2d 27, 31.

The record before us, being a default judgment as to defendants Oslager, contains no evidence regarding the issue of absence of necessary parties; therefore, it is necessary that we refer to the pleadings for resolution of this controversy. The complaint by plaintiff Pieszchalski prays that the court declare that the oil and gas lease was of no force or effect and that all right, title and interest of the Oslagers and the Middekes "be ordered cancelled, terminated and removed as a cloud upon title," and that the court declare any personal property and equipment left on the land forfeited and abandoned to plaintiff.

We are referred to no Illinois cases by the parties in which the question of the absence of necessary parties was considered in the context of partial assignees of oil and gas lessees, and our research has revealed none. Plaintiff urges that we consider certain comments of Professors Williams and Meyers in their treatise, Oil and Gas Law.

We find that source helpful, but not the section urged by plaintiff. Section 877.1, cited by plaintiff, concerns the need to join all co-lessors, not co-lessees, in an action to cancel a lease. (5 R. Williams & C. Meyers, Oil & Gas Law sec. 877.1, at 514-16 (1982).) We find the following section to be more helpful:

"When there have been partial assignments by the lessee, the partial assignee is a necessary party defendant in an action to cancel the lease as to his assigned acreage. If he is not joined as a party to an action to cancel the lease, any decree of cancellation therein entered does not affect his interest. If the lease as a whole has not been properly developed and if the assignee was not joined in the prior suit, it will be necessary for the lessor or his assigns to institute a separate action against the partial assignee to cancel the lease as to the acreage assigned to him. In cases of this kind there may be found a discussion by the court of whether or not there has been adequate development of the acreage assigned to the defendant. This discussion is relevant in such instances since there has not been such exploration or development of the entire lease sufficient to prevent cancellation of the lease at least in part, and hence the partial assignee can avoid cancellation only by showing reasonable exploration or development of his segregated portion thereof." 2 R. Williams & C. Meyers, Oil & Gas Law sec. 409.4, at 301-02 (1981).

Furthermore, we note that the lease in question states, at paragraph 7:

"The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, executors, administrators, successors, and assigns ***. An assignment of this lease, in whole or in part, shall to the extent of such assignment, relieve and discharge lessee of any obligations hereunder, and, if assignee of part or parts hereof shall fail to comply with any provisions of the lease, such default shall not affect this lease in so far as it covers the part of said lands retained by lessee or another assignee."

■ The construction of a lease is governed by the intention of the parties thereto. (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 8, 424 N.E.2d 56, 58.) Paragraph 7 of the instant lease indicates that the parties intended to render the rights and duties of the lessee and his assignees divisible to the extent that the lessors could seek cancellation of the lease as to one or more but less than all of those parties having a working interest in the lease. However, as Professors Wil-

liams and Meyers note, the decree of termination as to the Oslagers can have no effect on the interest of the Middekes, the owners of a "segregated portion" of the lease, but who were not parties to the judgment. The trial court did not purport to cancel the lease as to the Middekes by the judgment against the Oslagers, and the fact that the Middekes were not parties to the judgment complained of does not affect its validity as to the Oslagers. The judgment correctly states that the interests canceled are those of the Oslagers and that the items of equipment left on the land in connection with the lease "are now the property of Leo Pieszchalski, free and clear of any interest of defendants John J. Oslager and Madelyn B. Oslager." The judgment against John J. and Madelyn B. Oslager does not purport to award the equipment to Pieszchalski free and clear of any interest of the Middekes. Therefore, we conclude that the judgment against the Oslagers is not fatally defective in that it fails to adjudicate the interests of the Middekes.

We next consider the Oslagers' contention that the default judgment against them should be reversed because Pieszchalski's complaint failed to state a cause of action for termination of the lease under the habendum clause. This issue is also raised by the appeals of the Middekes and Farm Feeds. The latter two parties, not having defaulted at trial, also dispute the sufficiency of the proof on this issue to sustain the judgment that the lease terminated under its own terms. For the sake of convenience, we consider these matters together.

■ We are of the opinion that all issues relating to the pleadings have been waived. The record on appeal does not indicate that the Oslagers or Farm Feeds ever raised this issue prior to the instant appeal. As provided by section 2—612(c) of the Civil Practice Law (Ill. Rev. Stat. 1981, ch. 110, par. 2—612(c)), all defects in pleadings, either in form or substance, not objected to in the trial court are waived. (*Christensen v. Wick Building Systems, Inc.* (1978), 64 Ill. App. 3d 908, 911, 381 N.E.2d 1189, 1191.) Furthermore, no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which said party is called upon to meet (Ill. Rev. Stat. 1981, ch. 110, par. 2—612(b)). Pieszchalski's complaint in the case at bar reasonably informed the opposite parties of the existence of the lease, of their alleged duty thereunder and their alleged breach thereof, and of the relief sought, *i.e.*, declaration that the lease had terminated by its own terms. The Oslagers, the Middekes, and Farm Feeds contend on appeal that the lease did not impose upon them the duty Pieszchalski al-

leged was imposed, namely, the duty to produce oil or gas in paying quantities. However, if the complaint states a cause of action, no matter how defectively or imperfectly alleged, and the same is not challenged in the trial court, then such defectively stated cause of action is cured by judgment or verdict and cannot be questioned on appeal. (See *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 250, 52 N.E.2d 177, 180; *Lasko v. Meier* (1946), 394 Ill. 71, 75, 67 N.E.2d 162, 165.) We add that it would be a complete waste of judicial manpower and court facilities to permit the Oslagers to acquiesce in a plaintiff's obtaining a judgment by default, with the attendant expenditure of time and money, and then allow them to later attack pleadings which they contend could have been dismissed prior to trial. *Cf. Third Swansea Properties, Inc. v. Ockerland Construction Co.* (1976), 41 Ill. App. 3d 894, 899, 354 N.E.2d 148, 151, where it was apparent that the defect complained of could have been cured by amendment.

Although the Middekes did raise the pleading issue in the trial court, the court held it to have been waived. We agree. The record indicates that the Middekes filed their answer to Pieszchalski's complaint on October 1, 1982, making no reference to the pleading issue. Thereafter the Middekes filed interrogatories, petitioned for a change of venue, and joined with the Oslagers in filing an appeal to this court. On December 9, 1982, the Middekes moved to dismiss the complaint on the ground that they had no right, title or interest in the premises in question. Said motion was denied. Farm Feeds filed its complaint on December 27, 1982. On January 19, 1983, the Middekes filed their motion for "Judgment on Pleadings" upon Pieszchalski's complaint, urging that "production in paying quantities" was not necessary to extend the lease under the habendum clause. No motion to withdraw the Middekes' previous answer to Pieszchalski's complaint appears of record.

■ Generally, where a complaint substantially although imperfectly alleges a cause of action, the defendant waives any defect by answering it without objection. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 572, 442 N.E.2d 648, 651; *Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Limited Partnership* (1983), 112 Ill. App. 3d 951, 958, 445 N.E.2d 1313, 1318; *Dunham v. Dangeles* (1978), 67 Ill. App. 3d 252, 255, 384 N.E.2d 836, 838.) The only exception to this rule is where the complaint wholly fails to state a cause of action. (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648.) Such is not the case in the instant action. As noted above, Pieszchalski's

complaint alleges defendant's duty, its breach, and the relief sought. It cannot be said that these allegations were stated so defectively as to allege no cause of action whatsoever. Further, the complaint contained sufficient information to reasonably inform the Middekes of the nature of the claim they were called upon to meet. See *County of Winnebago v. Willsey* (1970), 122 Ill. App. 2d 149, 153-54, 258 N.E.2d 138, 141.

Turning to the next issue raised by the instant appeal, we are unable to agree with the Oslagers, the Middekes, and Farm Feeds that the evidence adduced at trial was insufficient to establish that the lease in question had terminated. In determining that said defendants' leases had terminated, the trial court held that *Gillespie v. Ohio Oil Co.* (1913), 260 Ill. 169, 170, 102 N.E. 1043, 1044, relied upon by the lessees and their assigns, no longer states the law in Illinois; however, we are of the opinion that the decision in *Gillespie* need not be disregarded. We find *Gillespie* to be distinguishable in that it does not stand for the proposition these defendants attribute to it, *i.e.*, that any production, however meager, is sufficient in any event to extend an oil and gas lease beyond the primary term under a habendum clause not requiring production of oil or gas in paying quantities.

In *Gillespie v. Ohio Oil Co.*, lessors sought a determination by the court that an oil and gas lease was null and void on the ground that the lease had expired by its own terms by virtue of the fact that lessors had never been paid royalty since the drilling of a well on the leased premises. The lease was for a term of five years and for so long thereafter as oil or gas was "produced." It was not disputed that the five-year primary term had expired before the suit was filed. While acknowledging that the quantity of oil produced (96 barrels in 21 months) was so small as to cause the venture to be unprofitable, the supreme court held that the lease had not expired by its own terms. The court based its decision on the fact that oil had been produced continuously since the drilling of the well.

We are not persuaded that the result in *Gillespie v. Ohio Oil Co.* would have been the same absent the latter fact, which demonstrated the operator's diligent attempts to get what little oil could be recovered from the one well on the 90-acre leasehold. By contrast, in the case at bar Oslager testified that he would pump the single well on the real estate leased from plaintiff's predecessor in interest until the saltwater pit was filled, then shut down. This limited pumping operations to 10 hours a day in summer, when evaporation was at its peak, and as little as two to three hours a day at other times. Oslager stated that he checked the well and timer-operated pump unit about

twice a week. He further stated that sometimes he would go out to the well every day and one day after another if he was working on it. The result was the production of 68.82 barrels of oil in the two years prior to suit, an amount which the on-site storage tank easily held. As a consequence, no one received any proceeds from sale of oil during that period.

The Oslagers, the Middekes and Farm Feeds urge us to conclude that the trial court erred in finding that the parties to the lease did not intend that the lease be extended beyond the primary term under these circumstances.

The construction of a lease is governed by the intention of the parties thereto, and the court should ascertain and give effect to such intention so far as that may be done without contravening legal principles. *Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 424 N.E.2d 56.

Courts of review have stated the purpose for which parties enter into oil and gas leases to be as follows:

> "The purpose of an oil and gas lease is to obtain production. Unless lessee obtains production, he cannot recover his drilling expense. Lessor depends upon production for receipt of the royalty provided in the lease. This purpose can only be accomplished if the production which can keep the lease effective for an indefinite future period is production in the ordinary sense of the term, and hence results in royalties to the lessor." (*Metz v. Doss* (1969), 114 Ill. App. 2d 195, 198, 252 N.E.2d 410, 412.)

In this regard, this court recently stated:

> "Indeed, the purpose behind actions to have an oil and gas lease declared terminated, such as this action, as well as suits to cancel these leases, is to promote development of the land for oil and gas so that the owner may receive royalties. (3 W. Summers, The Law of Oil and Gas sec. 453 (rev. ed. 1958).)" (*Belden v. Tri-Star Producing Co.* (1982), 106 Ill. App. 3d 192, 200, 435 N.E.2d 927, 933.)

This rationale has also been stated as follows:

> "In order to understand and properly interpret the language used by the parties [to an oil and gas lease] we must consider the objects and purposes intended to be accomplished by them in entering into the contract. The object of the contract was to secure development of the property for the mutual benefit of the parties. It was contemplated that this would be done during the primary period of the contract. So far as the lessees were concerned, the object in providing for a continuation of the lease for an indefinite time after the expiration of the primary

period, was to allow the lessees to reap the full fruits of the investments made by them in developing the property. Obviously, if the lease could no longer be operated at a profit, there were no fruits for them to reap. The lessors should not be required to suffer a continuation of the lease after the expiration of the primary period merely for speculation purposes on the part of the lessees." (*Garcia v. King* (1942), 139 Tex. 578, 585, 164 S.W.2d 509, 512-13.)

Thus, as indicated by the courts in *Metz v. Doss, Belden v. Tri-Star Producing* and *Garcia v. King*, due consideration must be given to the lessor's object and purpose to receive royalty payments resulting from the production of oil or gas when he enters into an oil and gas lease.

In construing a written instrument, its letter should be controlled by its spirit and purpose, bearing in mind that the terms employed are servants and not masters of an intent, and are to be interpreted so as to subserve, and not to subvert, such intent. (*United States Trust Co. v. Jones* (1953), 414 Ill. 265, 271, 111 N.E.2d 144, 147.) Furthermore, a strict construction which renders a different result from that intended by the parties will not be adopted. *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.

■ Whether the lease was "producing" was, in the instant case, a question of fact for the trial court to determine, and we find that the court's decision was not contrary to the manifest weight of the evidence. (See *Okmulgee Supply Corp. v. Anthis* (1940), 189 Okla. 139, 141, 114 P.2d 451, 453; *Sunburst Oil & Refining Co. v. Callender* (1929), 84 Mont. 178, 193, 274 P. 834, 839.) We therefore conclude that a cause of action for termination of the lease under its own terms was pleaded and proved in the case at bar.

■ We next consider the Oslagers' contentions concerning whether the trial court properly found the Oslagers to have abandoned the equipment and personal property on the land. The Oslagers urge that the complaint did not state a cause of action for abandonment of equipment, that no evidence of intent to abandon was shown, and that paragraph 6 of the lease specifically granted the lessees the right to remove the equipment and personal property at any time during or after expiration of the lease.

Abandonment is an intentional relinquishment of a known right. (*Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, 576, 375 N.E.2d 881, 883.) A party seeking to declare an abandonment of an oil and gas lease must prove that the abandoning party intended to do so. (*Belden*

*v. Tri-Star Producing Co.* (1982), 106 Ill. App. 3d 192, 203, 435 N.E.2d 927, 934.) An oil and gas lease may be abandoned by cessation of operations for an unreasonable length of time. *Spies v. DeMayo* (1947), 396 Ill. 255, 274, 72 N.E.2d 316, 325.

In the case at bar, Pieszchalski's complaint alleged that the Oslagers and the Middekes had abandoned the lease and the equipment and that there had been no production in paying quantities for over two years prior to the date of the complaint. Pieszchalski's answer to the Middekes' interrogatories stated that the last oil royalty check had been received August 15, 1980. We conclude that abandonment of the lease was sufficiently pleaded and that, under the circumstances, the Oslagers could have been found to have defaulted on the lease. (See *Spies v. DeMayo* (1947), 396 Ill. 255, 72 N.E.2d 316, affirming a finding of abandonment where the last oil produced was shipped 27 months prior to filing of the complaint.) However, inescapable is the provision in the lease in the case at bar which granted to the lessee, and his assigns, the right to remove all property and fixtures placed by lessee on the land "at any time during or after the expiration of this lease ***." Although the Oslagers defaulted at trial, they entered appearances and denied the allegations of the complaint; therefore, Pieszchalski was required to establish his claim for relief as if the Oslagers were present to try the case. *Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 131, 383 N.E.2d 681, 683-84.

For the foregoing reasons, we reverse the judgment against the Oslagers as to abandonment of the equipment. We affirm in all other respects.

Since we affirm the judgment nominally rendered against Farm Feeds, that its interest in the lease in question had terminated under the habendum clause, it is unnecessary that we consider Farm Feeds' contention that it was not bound by the judgment against the Oslagers.

For the reasons stated, the judgment of the circuit court in favor of Pieszchalski and against the Oslagers on the issue of abandonment of equipment is reversed; the judgments are affirmed in all other respects.

Reversed in part; affirmed in part.

JONES and KARNS, JJ., concur.