THE VILLAGE OF CYPRESS, Plaintiff-Appellee, v. FRED GREEN, Defendant-Appellant.

Fifth District   No. 5—85—0827

Opinion filed April 8, 1987.

120

Sara Nierste, of Ronald E. Osman & Associates, Ltd., of Dongola, for appellant.

Edward J. Kionka, of Murphysboro, and Brocton Lockwood, of Marion, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, the Village of Cypress (village), brought suit against the defendant, Fred Green, a resident of the village, seeking damages for obstruction of a strip of land that was claimed by the village as a public road within its corporate limits. The village claimed that the land had become a public way through prescriptive use by the public for 15 years pursuant to section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1983, ch. 121, par. 2—202). The trial court found for the village and assessed damages against the defendant in the amount of $4,000 actual damages and $1,000 punitive damages. On appeal defendant

Green contends (1) that the court lacked jurisdiction to decide the case because the owner or owners of the property on which the road was located were not joined as parties defendant and (2) that the evidence failed to support the court's finding that the road in question was a public road. The defendant additionally contends (3) that the record was insufficient to support the trial court's award of $4,000 actual damages and (4) that the court's award of $1,000 punitive damages was improper. We affirm in part and reverse in part and remand this cause for a redetermination of the amount of actual damages to be assessed against the defendant.

The plaintiff village is an Illinois municipality located in Johnson County. Prior to 1931 the main north-south street within the village was a State route referred to as "Public Road." Subsequent to 1931, the State constructed a new highway, Route 37, which ran through the center of the village one block west of the old Public Road. A diagonal section of the old Public Road crossed Route 37 and that part on the east side of Route 37 connected the village's main street, the old Public Road running north and south, with Route 37 at the north end of town. On a map prepared by the predecessor of the Illinois Department of Transportation (Department) in 1931, this diagonal section was shown to be abandoned. It is this diagonal section, measuring approximately 200 feet in length, that is the subject matter of the village's suit.

In its amended complaint against the defendant, the village alleged that the portion of the old Public Road in question had been used by the general public "continuously, openly and for public purposes" for more than 15 years and that the defendant, on August 13, 1984, and at various times thereafter, had used heavy equipment to remove the tar and chip surface of the road and had piled dirt on the road, rendering it impassable. The village sought damages from the defendant in an amount necessary to remove the dirt from the roadway and restore the road to a safe and passable condition. The village additionally sought punitive damages, alleging that the defendant, "after notice to desist, [had acted] wilfully and maliciously and with a wanton disregard of the rights of the plaintiff." The defendant answered the plaintiff's complaint, denying that he was without legal right to act as he had and, in an amended affirmative defense, asserted that any use of the property by the public as a road had been with the consent of the owner and that his actions had also been taken with the consent of the present owner of the property.

At trial evidence was adduced regarding the public's use of the previously abandoned portion of the Public Road in question. Various

witnesses, including defendant Green, testified that the road had been used by the public for more than 15 years. The village clerk, Mary Jo King, testified that the road had been used continuously by the public since 1948. Former mayor Carol Racey testified that the road had been continuously traveled as a public roadway for the entire 13 years that she had lived in the village. Deputy Sheriff Robert Harner testified that the public had used the roadway for more than 16 years. The defendant's witness, Wilford Dunn, a village board member, testified that he had been familiar with the property for 25 years and that it had always been used by the public. Former board member Ray Gore, age 65, testified that he had lived in the village all of his life and that the roadway in question had been in the same location and had been used continuously by the public for as long as he could remember. The defendant's son-in-law, Frank Moake, testified that he had been familiar with the property for 25 years and that it had always been used by the public. Finally, defendant Green testified that the public did not start using the roadway in question until 1938 or 1939, but he admitted that since that time it had been used continuously by the public.

In further testimony defendant Green stated that in 1938 or 1939, he had made himself a place to park on the property in question with the permission of Molly and Jess Hunter, who owned the property. He had leveled off a portion of the land where the old Public Road had been and had put some gravel on it so that he could park his truck there. At about that same time the general public started to use the property to reach Route 37 from the east.

In 1981 the defendant's son-in-law, Frank Moake, purchased some property at a foreclosure sale that he claimed included the roadway in question. There was some confusion as to the title or description of the property purchased by Mr. Moake. Robert Krudwig, an abstractor in Johnson County, testified that title to the roadway was presently held by heirs of Jess Hunter, who had purchased the property in 1919. Moake stated that he had paid taxes on eight acres of property that he claimed included the area where the roadway was located. Frank Moake took possession of the property adjoining the roadway and built a house. After moving into his new home, Mr. Moake and his father-in-law, defendant Green, decided to fill in the roadway and plant the entire area, in order to expand the lawn beside Moake's house and to keep cars from running past his house.

On August 13, 1984, defendant Green began filling the roadway with dirt, using a large tractor. Upon learning of this activity, Carol Racey, the mayor of Cypress at that time, rushed to the scene and tried to communicate with the defendant by waving her arms and

shouting. The defendant saw her but ignored her and continued to work. Mrs. Racey consulted with the sheriff and the State's Attorney and subsequently hired a bulldozer and returned to the scene. By this time the road was completely covered with dirt. Confronted by the mayor and Deputy Sheriff Harner, the defendant signed a paper in which he agreed to restore the street to its former condition. He subsequently did some grading and dumped some rock on the roadway, but it was not properly repaired. The mayor tried on two or three occasions to get the defendant to restore the road to its former condition, without success. At the time of trial the road remained covered with dirt.

The roadway, prior to the defendant's actions, had had a hard surface from years of "tar and chipping." This was the same kind of surface as on the other streets in the village. Former mayor Carol Racey testified that the village had maintained the portion of roadway in question, although it was unclear from the plaintiff's exhibits how much money was actually expended on the portion in question. The plaintiff's exhibits showed that in 1965 motor fuel tax funds had been spent to clean ditches, drains, and right-of-ways on the Public Road and to reseal part of the entire Public Road running through the town. Similar work was done in 1970 and 1971. This evidence was corroborated by the defendant's witness, village board member Wilford Dunn, who stated that it had been 10 years since village money had been spent on the the roadway in question, which he described as having an "oil and chip" surface.

Former mayor Carol Racey testified that although the roadway had been completely covered with dirt by the time she saw it after the defendant and his son-in-law had worked on it, she had seen "scrapes at the end of the dirt pile where they had scraped up some of the pieces of [the oil and chip]." Both the defendant and his son-in-law, Frank Moake, testified that they had merely covered the roadway with dirt, leaving the hard surface intact. Frank Moake described the road as an "oil and chip" road with sand rock below and stated that the oil and chip base was "still down there," although "it might have some skins on it here and there."

There was conflicting testimony as to the width of the roadway as it existed before the defendant covered it with dirt. The defendant and his son-in-law testified that the road was 9 feet wide, with room for only one vehicle to pass at a time. Former mayor Carol Racey testified that the roadway was 18 to 20 feet wide, and Deputy Sheriff Harner stated that the road was 15 to 20 feet wide, with room for two cars to "squeeze" past each other. The defendant's witness, village board

member Wilford Dunn, stated that the road was about 16 feet wide before the defendant covered it up.

Victor Patterson, an employee of Southern Illinois Asphalt, testified that it would cost $5,500 to put down a rock base on the 200-by-20 foot strip of roadway and cover it with 3 inches of hot mixed asphalt. He had not measured the roadway himself and did not know whether the road surface had been asphalt or not before it was covered with dirt. Patterson testified that a bid for a 200-by-10 foot roadway with an oil and chip surface would be substantially less than $5,500. He stated that it would be necessary to have a rock base for an oil and chip road, but he did not know whether there was a rock base already existing under the dirt on the roadway in question.

At the close of the evidence, the trial court entered judgment in favor of the village, finding that the strip of land in question:

> "was a public street in the Village *** by reason of open and notorious use thereof by the general public as a public street for more than fifteen years."

The court additionally found that:

> "[t]he defendant unlawfully and without authority covered the street with large amounts of dirt which greatly impeded the use of said street by the public and thus created a public nuisance."

The trial court found that the plaintiff had been damaged by the defendant's misconduct in the amount of $4,000 and, additionally, that the defendant's misconduct:

> "was willful, showing wanton disregard for the property and rights of others, for which defendant should be punished in the amount of $1,000."

The court, therefore, entered judgment against the defendant in the amount of $5,000, plus costs.

On appeal from this judgment, the defendant contends initially that the court's judgment was void for lack of jurisdiction over all necessary parties because the owner or owners of the property where the roadway was located were not joined as parties to the proceeding. It is the defendant's position that because the court's judgment involved a determination that the roadway was a public road by reason of public use for the required statutory period, the court's judgment had the effect of depriving the landowners of their property without notice and without compensation in violation of their constitutional rights.

We find the defendant's argument to be unavailing because, as the plaintiff points out, the instant case was not an action to determine ownership of the roadway as against all the world but was, rather, merely an action against the defendant for damages caused by his ob-

struction of the road claimed to be a public way. Thus, it was not necessary, as in an eminent domain case involving the taking of private property for public use or a declaratory judgment action regarding the public's prescriptive right to property used by the public, to join all those who claimed ownership in the property in order to have a complete resolution of the matter in controversy.

■■■ It is settled that a necessary or indispensable party is one having a present, substantial interest in the matter being litigated and in whose absence a complete resolution of the matter in controversy cannot be achieved without affecting that interest. (*Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 470 N.E.2d 1083.) While, in the instant case, the village had to prove the same facts that it would have had to prove if it were litigating its rights against the landowner, the only issue being litigated was the defendant's liability for damages. The judgment here was binding only as against the defendant, and the owners or others claiming an interest in the property were not affected by the judgment against the defendant. It cannot be said, therefore, that such owners were indispensable parties so as to render invalid the judgment entered in their absence. See 128 Ill. App. 3d 437, 470 N.E.2d 1083.

Unlike *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471, cited by the defendant, in which the question of ownership of the property involved was raised by the plaintiff's request to have a roadway used by the plaintiff and adjoining landowners declared a public highway, the ownership of the road in question was not put in issue by the pleadings except to the extent that the defendant asserted, in his affirmative defense, that he was not the owner of the road and that any use by the public had been with the consent of the owner. The defendant, however, failed to sustain his burden of proving the facts alleged in his affirmative defense and cannot now attack the judgment as invalid because the alleged owner was not made a party to the action. The determination of whether a party is necessary to a cause of action is controlled by the issues presented in the case by the pleadings and the evidence. (*Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 470 N.E.2d 1028; *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471.) Since the plaintiff, by its complaint, sought damages against the defendant for his obstruction of the roadway and not a determination of the ownership of the roadway in question, it was not necessary to join the owners of the property where the roadway was located in order to have a valid judgment against the defendant, and we reject the defendant's contention to that effect.

The defendant contends additionally that the evidence was insufficient to support the trial court's finding that the road in question was a public road. Specifically, the defendant asserts that the plaintiff failed to show that the public's use of the road was with the knowledge but without the consent of the record owner or that the lane as it now exists was used by the public for more than 15 years. In addition, the defendant asserts that the payment of taxes by Frank Moake on the property in question negated any adverse claim of right by the public, requiring reversal of the trial court's judgment for the plaintiff.

■■ ■ Under the statute relied upon by the plaintiff, a private road becomes a public highway if it is used by the public for the requisite 15 years. (See Ill. Rev. Stat. 1983, ch. 121, par. 2—202.) In order to establish a public highway by prescription under the statute, it is necessary to show use by the public that is adverse, under a claim of right, continuous and uninterrupted, with the knowledge of the owner but without his consent. (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471; *Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 332 N.E.2d 568.) A finding that a particular way is a public highway by prescription is a finding of fact that will not be reversed on appeal unless contrary to the manifest weight of the evidence. *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471.

■■ As the defendant observes, it is a necessary element of proof that the public's use of the roadway be shown to be with the knowledge but without the consent of the owner, as mistaken or permissive use cannot ripen into a prescriptive right. (57 Ill. App. 3d 991, 33 N.E.2d 471.) The burden of proof of the elements of prescription rests on the party pleading the prescription. However, once a roadway is shown to have been used and enjoyed by the public for the time required by statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of right in the public. *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471; *Swinford v. Roper* (1945), 389 Ill. 340, 59 N.E.2d 863.

■■ In the instant case the evidence was overwhelming that the public had used the road in question openly, notoriously, and continuously for more than 15 years. All of the witnesses except defendant Green testified that the roadway had been in the same location for the entire period of public use. Despite Green's assertion that the public road was in a different location than the roadway he had covered up, there was ample evidence that the roadway was once the original "Public Road" and that it continued to be used by the public.

■ In addition to the public use, there was also evidence of public maintenance of the road in question. Public maintenance of a road is a strong indication that it is a public highway. (*Verh v. Morris* (1951), 410 Ill. 206, 101 N.E.2d 566; *Foster v. Wills* (1973), 13 Ill. App. 3d 127, 299 N.E.2d 765.) Public use and public maintenance of the road in question raised the presumption that the road was a public highway by prescription and shifted the burden to the defendant to show that the public's use was permissive. While defendant Green testified that he had obtained permission from owners Molly and Jess Hunter to build a parking place on the property in 1938 or 1939, he introduced no evidence that the public's use and maintenance of the road were with the permission or indulgence of the landowners where the roadway was located. Thus, the defendant failed to overcome the presumption of prescriptive use established by the plaintiff's evidence, and the record amply supports the trial court's finding of a public road.

The defendant's additional assertion that any claim of adverse use by the public was negated by evidence of Frank Moake's payment of taxes on the property in question is without merit. Even if Moake's payment of taxes had been shown to cover the roadway, it would not be conclusive, as such evidence does not compel a finding that a road is not a public highway but is merely one factor to be considered. (*Meade v. Commonwealth Edison Co.* (1977), 48 Ill. App. 3d 312, 362 N.E. 2d 779.) Moreover, while Frank Moake testified at trial that he had paid taxes on land totaling eight acres that he claimed included the roadway at issue, there was no showing that the taxes in fact covered the roadway, and there was conflicting evidence as to whether Moake actually owned the property where the roadway was located. Evidence of Moake's payment of taxes, therefore, was insufficient to overcome the plaintiff's *prima facie* case of public use, and the trial court properly entered judgment finding that the roadway had become a public road by prescription.

■ Assuming, *arguendo*, that the court's finding of liability was not erroneous, the defendant argues further that the record did not support the court's award of actual damages in the amount of $4,000 to the plaintiff village. We agree. As the defendant asserts, the only evidence in the record on the issue of damages was the testimony of Victor Patterson from Southern Illinois Asphalt to the effect that it would cost $5,500 to put down a rock base on the 200- by 20-foot strip of roadway and cover it with 3 inches of hot mixed asphalt. The testimony was undisputed, however, that the roadway as it existed prior to the defendant's acts of covering it with dirt had an "oil and chip" surface rather than an asphalt surface. Moreover, it was not clear from

the testimony whether and to what extent the existing rock base on the road had been damaged, and there was conflicting testimony as to exactly how wide the road was as it existed prior to the defendant's acts.

Mr. Patterson testified that he did not measure the existing roadway to determine its width and he had not checked to see if there was a rock base already in place under the dirt on the road. He also stated that a bid for an "oil and chip" road of a narrower width would be substantially less than $5,500. The record does not reflect how the trial court determined that it would cost $4,000 to repair the roadway to its previous condition, and we find the record to be insufficient to sustain the court's award of actual damages in this amount. We, therefore, reverse the trial court's judgment awarding actual damages in the amount of $4,000 and remand this cause for a redetermination of the actual damages to be assessed against the defendant.

■■ ■ The defendant contends finally that punitive damages should not have been imposed against him. The trial court, however, expressly found that the defendant's conduct was wilful and wanton and showed disregard for the property and rights of others. The record amply supports this finding, as there was evidence that the defendant acted intentionally to cover the road with dirt without making any attempt to determine the propriety of his actions. He knew that the road had been used by the public for years and that his actions would make the road unusable. He persisted with his conduct when confronted by the mayor and agreed to restore the road to its former condition only under duress. The defendant then refused to repair the road and continues to refuse to do so.

Where conduct is found to be wilful and wanton, punitive damages may be imposed. (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 487 N.E.2d 1281.) The trial court was justified in imposing such damages in this case, and we affirm its judgment in this regard.

For the reasons stated in this opinion, we affirm in part and reverse in part and remand this cause for further proceedings.

Affirmed in part, reversed in part, and remanded.

KARNS, P.J., and WELCH, J., concur.