R.E. BATES *et al.*, Plaintiffs-Appellees, v. ETHEL MANSFIELD *et al.*, Defendants-Appellants (Harold Mansfield *et al.*, Defendants-Appellees).

Fifth District   No. 5—89—0454

Opinion filed March 18, 1991.—Rehearing denied April 19, 1991.

Peter K. Woody, of Springfield, for appellants.

A. Ben Mitchell and L. James Hanson, both of Mitchell, Neubauer & Shaw, P.C., of Mt. Vernon, for appellee Vera L. Cummins.

Ray Fehrenbacher, of Fehrenbacher Law Offices, of Olney, for appellees Ray Fehrenbacher and Peter Morse, Sr.

Jerry Doyle Miller, of Olney, for other appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff-appellees, R.E. Bates *et al.*, hereinafter referred to as plaintiffs, brought this declaratory judgment action seeking a determination of their oil and gas rights in certain land located in Richland County, Illinois. At the trial of this cause defendants-appellants, Ethyl Mansfield and Gladys Hudson, hereinafter referred to as defendants, asserted that the plaintiffs had no oil and gas rights in the property. On July 5, 1988, the trial court found that plaintiffs did in fact have interests in the oil and gas rights. The court set forth the ownership

interests of the parties and ordered an accounting. It is from this judgment that defendants appeal. We affirm.

On February 20, 1967, Clifford L. Schnell and Beatrice Schnell, hereinafter referred to as lessors, executed an oil and gas lease, hereinafter referred to as "the Mansfield lease," to defendants, covering 40 acres in Richland County, Illinois. The Mansfield lease was for a term of 90 days and so long thereafter as oil or gas was produced from the land. Defendants subsequently sold 25/32 working interest in the Mansfield lease to various investors. Another document, also dated February 20, 1967, which purported to be a contract between the Schnells as lessors and defendants as lessees, provided that defendants would drill a second well within six months from the completion of the first commercial producing well.

In March or April 1967 defendants drilled a well, the Schnell No. 1, on the north 20 acres of the 40-acre tract and began producing oil from this well. Production continued at least through October of 1982. During this time defendants took no action to drill an additional well on the south 20 acres covered by the Mansfield lease.

Sometime prior to March 18, 1981, Clifford Schnell died. On that date Beatrice Schnell executed to J.C. Cummins, "d/b/a National Petroleum Company," hereinafter referred to as NPC, a second oil and gas lease, hereinafter referred to as the NPC lease, which covered the south 20 acres of the property previously leased to defendants under the Mansfield lease. The lease was for a term of one year and so long thereafter as oil or gas was produced from the land. Lessor warranted title to the south 20 acres.

On October 28, 1981, lessor filed an action against defendants to have the Mansfield lease declared forfeited and released of record as to the undeveloped south 20 acres. While the forfeiture action was pending, NPC drilled a well, the Schnell No. 2, on the south 20 acres, which began producing oil on February 10, 1982, and continued to produce oil at least until January of 1987. NPC assigned working interests in the NPC lease to plaintiffs on March 15, 1982.

In August 1984 the trial court in the first suit ruled that the Mansfield lease was not forfeited as it related to the south 20 acres. Its decision was affirmed by this court in *Schnell v. Hudson* (1986), 141 Ill. App. 3d 617, 490 N.E.2d 1052. However, while the forfeiture action was still pending, the lessor, Beatrice Schnell, obtained signatures from the defendants' investors, who had purchased 25/32 interest in the 1967 Mansfield lease, on documents entitled "partial release of oil and gas lease." The documents read as follows:

*"PARTIAL RELEASE OF OIL AND GAS LEASE*
KNOW ALL MEN BY THESE PRESENTS:
That the undersigned hereby release, surrender, and forever quit claim unto the Lessors named therein and their successors in interest any and all rights whatsoever acquired or held under that certain Oil, Gas and Mineral Lease dated February 20, 1967, and recorded in Book 23, at page 340, in the Office of the Recorder of Deeds of Richland County, Illinois, insofar and only insofar as said Lease covers the following described land:

The East Half (E/2) of the Southwest Quarter (SW/4) of the Southeast Quarter (SW/4) of Section Nine (9), Township Three (3) North, Range Nine (9) East, Richland County, Illinois.

The undersigned expressly reserve all their right, title and interest in and to said Lease insofar as the same covers the following described land:

The East Half (E/2) of the Northwest Quarter (NW/4) of the Southeast Quarter (SE/4) of Section Nine (9) Township Three (3) North, Range Nine (9) East, Richland County, Illinois,

upon which is located an oil and gas well known as the Schnell No. 1, Union Oil Company Lease No. 2—2—594—632—00.

EXECUTED this 23rd day of June, 1982."

These documents were executed by defendants' investors between May 1982 and December 1982.

Defendants have made several arguments in support of their contention that the trial court erred in finding that the plaintiffs possess ownership interests in the south 20 acres. The major premise of defendants' arguments is that they are "bottom" lessees and that plaintiffs are "top" lessees. Defendants assert that plaintiffs, top lessees, could not acquire any interest in the south 20 acres until the *Mansfield* lease, the bottom lease, was completely terminated.

■ Defendants cite *Rorex v. Karcher* (1923), 224 P. 696, and *Jennings v. Elliot* (1939), 186 Okla. 285, 97 P.2d 67, in support of their positions. These cases hold that while a lessor has the right to execute an oil and gas lease covering land that is already subject to an unexpired lease, the second lessee, or top lessee, does not acquire the right to explore and develop the land until the first lease, the bottom lease, is terminated. (*Jennings*, 186 Okla. at 288, 97 P.2d at 71; *Rorex*, 224 P. 696.) There is no dispute over the validity of these holdings. Moreover, our opinion in *Schnell* makes it clear that NPC had no authority to drill and begin producing oil from the Schnell No. 2 on February 10, 1982. The question which remains to be decided is who

is entitled to the oil from the Schnell No. 2. Defendants assert that as bottom lessees they are entitled to 100% of the oil.

We might agree with defendants had they retained the entire interest under the Mansfield lease. However, defendants' arguments ignore the fact that they sold 25/32 of the working interest of their lease to investors and that these investors subsequently conveyed the 25/32 working interest to the lessor. Defendants argue that the documents executed by their investors failed to transfer present interests to the lessor. We disagree.

■ The term "working interest," as used in connection with an oil and gas lease, refers to the portion of the oil and gas that may be produced from the premises after the royalty for the share paid to the landlord is first deducted. (*Illinois National Oil & Gas Co. v. Sinclair* (1940), 373 Ill. 581, 27 N.E.2d 450.) In *Dunbar v. Olson* (1953), 349 Ill. App. 308, 110 N.E.2d 664, the court described the relationship which exists between fractional owners of the working interest under a lease:

> "A mere tenancy in common, or joint ownership of the property, does not make the owners partners, and the acquisition of interest in the leasehold estate by defendants other than Shaffer made them tenants in common only [citations]." (*Dunbar*, 349 Ill. App. at 311-12, 110 N.E.2d at 666.)

Tenants in common are entitled to transfer their interests. *Fyffe v. Fyffe* (1937), 292 Ill. App. 539, 548, 11 N.E.2d 857, 861-62.

■ The key terms contained in the documents executed by defendants' investors which are set forth above are "release," "surrender," and "quit claim." Black's Law Dictionary defines these terms as follows:

> "Release, *n.* ***
>
>                         \* \* \*
>
> The conveyance of a person's interest or right which he has in a thing to another that has the possession thereof or some estate therein. The relinquishment of some right or benefit to a person who has already some interest in the property, and such interest as qualifies him for receiving or availing himself of the right or benefit so relinquished."
>
> "Surrender. To give back; yield; render up; restore; and in law, the giving up of an estate to the person who has it in reversion or remainder, so as to merge it in the larger estate."
>
> "Quitclaim, *n.* A release or acquittance given to one man by another, in respect of any action that he has or might have

against him. Also acquitting or giving up one's claim or title." (Black's Law Dictionary 1159, 1295, 1126 (5th ed. 1979).)

Williams and Myers' Treatise on Oil and Gas Law defines the terms "surrender" and "release" as follows:

"As applied to the oil and gas lease the terms have been used synonymously to describe the transfer of the lessee's estate to the lessor." (H. Williams & C. Myers, Oil & Gas Law, §412.4, n.1 (1989).)

We conclude that the execution of the documents set forth above by defendants' investors transferred all interests which they possessed in the south 20 acres to the lessor. Defendants' investors were owners of 25/32 of the working interest in the Mansfield lease. Consequently, they were tenants in common with defendants and free to transfer their interests in the south 20 acres to whomever they pleased. The documents which they executed clearly reveal their intent to transfer all of their interest in the south 20 acres to the lessor.

Defendants next contend that a finding that the documents set forth above transferred a present interest to the lessor would be tantamount to a holding that the Mansfield lease was partially cancelled. Defendants assert that there cannot be a partial cancellation of an oil and gas lease. We disagree.

In *Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 470 N.E.2d 1083, the successor in interest of the original lessor brought suit to terminate an oil and gas lease. The lessors brought suit against Oslager, the lessee, and Middeke, an assignee of a portion of the working interest under the lease. On the day of trial Middeke asked for and was granted a continuance. However, a default judgment was entered against the lessee, Oslager. The judgment purported to cancel Oslager's interest in the lease. On appeal Oslager argued that the judgment entered against him was void because Middeke was not a party to the judgment. The court quoted Williams and Myers' Treatise on Oil and Gas Law:

" 'When there have been partial assignments by the lessee, the partial assignee is a necessary party defendant in an action to cancel the lease as to his assigned acreage. If he is not joined as a party to an action to cancel the lease, any decree of cancellation therein entered does not affect *his interest*. ***' " (Emphasis added.) (*Pieszchalski*, 128 Ill. App. 3d at 442, 470 N.E.2d at 1087, quoting 2 R. Williams & C. Myers, Oil & Gas Law §409.4, at 301-02 (1981).)

The appellate court held that Middeke was not a necessary party because the trial court's decree did not attempt to cancel his interest in

the lease and, therefore, the cancellation of the lessee's interest was proper. *Pieszchalski*, 128 Ill. App. 3d at 443, 470 N.E.2d at 1087.

Further support for the conclusion that there can be a partial cancellation of a mineral lease can be found in *McAnelly v. Graves* (1984), 126 Ill. App. 3d 528, 467 N.E.2d 377. In *McAnelly* the plaintiff was required by the lease to make an advance royalty payment of $35,000. A provision in the lease provided that the lease could be terminated by the lessor if the plaintiff failed to mine within two years. The provision required the lessor to return to the plaintiff $30,000 of the advance payment if he exercised the right to terminate the lease. The lessor's interest was subsequently divided into two equal portions in a divorce action. One of the lessors, Carlton, sought to cancel the lease under this provision. The appellate court held that Carlton, owning at most a one-half interest in the lease, could not cancel the entire lease as it extended to the property he did not own. However, in so holding the court stated:

> "Since the original lessors' interest in the leased property was divisible and assignable, we see no reason why the lease could not have been terminated as to part of the property while continuing as to the rest." *McAnelly*, 126 Ill. App. 3d at 536, 467 N.E.2d at 382.

The cases cited above indicate that there can in fact be a partial cancellation of a mineral lease. When defendants' investors executed the document set forth above, their interest under the Mansfield lease, 25/32 of the working interest in the south 20 acres, was transferred to the lessor, the holder of the reversionary interest. The lessor, holder of both interests, was free to lease or sell to a third party this 25/32 interest. *McAnelly*, 126 Ill. App. 3d 528, 467 N.E.2d 377.

Defendants next assert that the plaintiffs cannot be the owners of the 25/32 working interests. In view of our holding that defendants own no interest in the 25/32 working interest, it is unnecessary to address this argument. Any further dispute over the ownership of the 25/32 working interest would be between plaintiffs and the lessor. The lessor was a defendant in this action and has not appealed the trial court's decision which found that plaintiffs are the owners. Therefore, the decision of the trial court on that issue has become final.

For the foregoing reasons, the judgment of the circuit court of Richland County is affirmed.

Affirmed.

RARICK, P.J., and GOLDENHERSH, J., concur.